# EXHIBIT 6



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|

12M2/0814

EXAMINER

ART UNIT    PAPER NUMBER

1205

DATE MAILED: 08/14/95

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined    ☒ Responsive to communication filed on _MAY 8 1995_    ☒ This action is made final

A shortened statutory period for response to this action is set to expire __3__ month(s), _____ days from the date of this letter
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☒ Claims _1 3 5 8 19 21 28 30_ are pending in the application.

   Of the above, claims _8_ are withdrawn from consideration

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _1 3 5 7 19 21 28 30_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☒ Claims _8_ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 2/93)

Serial Number: 08/214,905                                    -2-
Art Unit: 1205

The May 8, 1995 Amendment and remarks have been considered,
as well as the Keith Kaufman Declarations.  Claims 1, 3, 4, 5, 6,
7, 8, 19, 20, 21, 28, 29, and 30 allegedly read on the elected
species of:

A)    finasteride of claim 10;

B)    oral route of administration of claim 6;

C)    male pattern baldness alopecia of claim 5;

and D)    male sex patients.  The restriction requirement is
adhered to and made FINAL without prejudice to representation of
the non-elected subject matter in a divisional application.
Claim 8, however, is also withdrawn, Rule 142(B) as a non-elected
topical method, (See page 6, line 9) parenteral is also non-
elected).  Oral is elected herein.

The claims can be allowed under recently distributed
"utility guidelines" in view of the Keith Kaufman Declaration if,
in claim 1, line 1, preceding "treating", and claim 21, preceding
"arresting" there is inserted-- lowering the level of 5-a-
dihydrotestosterone in human scalp, and thereby--.

Is Example 4, pages 12 to 14 "prophetic and speculative",
(?) it seems to be a protocol to be followed.  A Rule 132
Declaration is needed to corroborate Example 5, page 14, lines 30
to 35, that the "significant reduction in DHT content in scalp
tissue" led to statistically significant useful benefit in
treating androgenic alopecia as asserted.  The Keith Kaufman

Serial Number: 08/214,905                                    -3-
Art Unit: 1205

Declaration may or may not involve Ex. 5 or show statistical
significance, its hard to say one way or another, also, the
dosages employed do not correspond to the encompassed scope of
dosages claimed.

The factual inquiries set forth in *Graham v. John Deere Co.*,
383 U.S. 1, 86 S.Ct. 684, 15 L.Ed. 2nd 545 (1966), 148 USPQ 459,
that are applied for establishing a background for determining
obviousness under 35 U.S.C. § 103 are summarized as follows:

1.  Determining the scope and contents of the prior art;
2.  Ascertaining the differences between the prior art and
    the claims at issue; and
3.  Resolving the level of ordinary skill in the pertinent
    art.

Claims 1, 3 to 7, 19 to 21, and 28 to 30 are rejected under
35 U.S.C. § 103 as clearly <u>motivated</u> by each of: Metcalf, Diani
(1992), Sudduth, Rasmussen (I, II), Petrow, and Orentreich (I-
II), differing <u>only</u> in the optimum dosage level to obtain the
same result, with susceptible balding subjects.  No Experts'
Declaration has been presented to establish the lack of
motivation to reduce the dosages described by Rasmussen (I-II) and
Petrow and other of the prior art; difference in an experts'
expectations from Metcalf's finding in rats, that Diani is "a
teaching away", or to <u>omit</u> progesterone and select a type 2
inhibition in Orentreich (I-II), a type 2 inhibition in
Orentreich (I-II).  Keith Kaufman's Declaration is <u>silent</u> on each
of these points.

Serial Number: 08/214,905                                    -4-

Art Unit: 1205

**THIS ACTION IS MADE FINAL.** Applicant is reminded of the

extension of time policy as set forth in 37 C.F.R. § 1.136(a).

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS
OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION
IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED
STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE
ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.

A facsimile center has been established in Group 1200, room 3C10.
The hours of operation are Monday through Friday, 8:45 AM to 4:45
PM. The telecopier numbers for accessing the facsimile machine
is (703) 308-4556 or 305-3592.

ROSE:jd
AUGUST 4, 1995

SHEP K. ROSE
PRIMARY EXAMINER
GROUP 1200

# EXHIBIT 7



BOX AF

EXPEDITED PROCEDURE UNDER 37 C.F.R. § 1.116

EXAMINING GROUP 1205

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicants: G. J. Gormley et al. | |
| Serial No.: 08/214,905  Case No.: 191091A | Art Unit: 1205 |
| Filed: March 17, 1994 | Examiner: S. Rose |
| For: METHOD OF TREATING ANDROGENIC ALOPECIA WITH 5-ALPHA REDUCTASE INHIBITORS | |

The Assistant Commissioner for Patents
Box AF
Washington, D.C. 20231

AMENDMENT UNDER 37 C.F.R. § 1.116

Sir:

   This is in response to the Final Rejection mailed August 14, 1994, having an appeal due Tuesday, November 14, 1995. Enclosed herewith is a Declaration under 37 C.F.R. § 1.132 by Dr. Keith Kaufman.

In the Claims

   Cancel Claim 8.

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231, on the date appearing below.

MERCK & CO., INC.

Catherine Pitch   Date 11/14/95

U.S.S.N.: 08/214,905
Case No.: 19109IA
Page No.: 2

## REMARKS

Reconsideration of the application, and entry of the amendment above are respectfully requested.

Claims 1, 3 to 8, 19 to 21 and 28 to 30 were pending in the present application. Claim 8 was withdrawn from consideration subject to a restriction requirement. Claims 1, 3 to 7, 19 to 21 and 28 to 30 were rejected. Claim 8 has been canceled. Currently, Claims 1, 3 to 7, 19 to 21, and 28 to 30 are under consideration.

The Examiner had required an election of a single disclosed species of (a) active agent, (b) route of administration, (c) alopecia and (d) sex of person under 35 U.S.C. § 121.

Applicants had elected the following:

(a) active agent is finasteride (17β-(N-tert.-butylcarbamoyl)-4-aza-5α-androst-1-ene-3-one) specifically claimed in Claim 10;

(b) route of administration is oral, specifically claimed in Claim 6;

(c) type of alopecia is male pattern baldness, specifically claimed in Claim 5; and

(d)    sex of patient is male; stating that this election read on Claims 1, 3, 4, 5, 6, 7, 8, 19, 20, 21, 28, 29, and 30.

The Examiner adhered to the election of species and made it final without prejudice to representation of the nonelected subject matter in a divisional application  The Examiner also withdrew Claim 8 as a non-elected topical method.

The Examiner stated that the claims could be allowed under the "utility guidelines in view of the Keith Kaufman Declaration if, in Claim 1, line 1,

U.S.S.N.: 08/214,905
Case No.: 19109IA
Page No.: 3

preceeding "treating" and Claim 21, preceding "arresting"  there is inserted--
lowering the level of 5α-dihydrotestosterone in human scalp and thereby--.

Applicants respectfully submit that such an amendment to the claims
is not necessary. The patentability of the invention does not depend on the
mechanism by which the claimed invention works. Applicants should not be
required to introduce elements into the claim on which patentability does not
depend. Applicants provided the information relating to the theory by which their
invention may operate. However, Applicants' invention  is that low doses of the
5α-reductase 2 inhibitor, finasteride, grow hair in patients suffering from
androgenic alopecia. Applicants should not be required to add terminology to a
claim when such terminology does not affect the patentability of the claim.

In light of the remarks above, Applicants respectfully request
reconsideration of the Claims under the utility guidelines.

The Examiner queried whether Example 4, pages 12 to 14 is
"prophetic and speculative." Applicants provided Example 4 in the present
application to show one of ordinary skill in the art how to use macrophotography
and global photography to detect the effect of the present invention, hair growth, in
patients suffering from androgenic alopecia.

The Examiner stated that a rule 132 Declaration was needed to
corroborate Example 5, page 14, lines 30 to 35 that the "significant reduction in
DHT content in scalp tissue" led to statistically significant useful benefit in treating
androgenic alopecia as asserted.  Further, the Examiner stated, "The Keith
Kaufman Declaration may or may not involve Example 5 or show statistical
significance, its hard to say one way or another, also, the dosages employed do not
correspond to the encompassed scope of the dosages claimed."

The Keith Kaufman Declaration previously presented involved a
different study from the study that measured the DHT levels in the scalp (which
was the basis of Example 5). The study in Example 5 was a 6-week study. The

U.S.S.N.: 08/214,905
Case No.: 19109IA
Page No.: 4

study presented in the previous Keith Kaufman Declaration was a 6 month study (subsequently extended to 12 months) designed to determine the effects of low doses of finasteride in men with male pattern baldness. The 6 month study reported in the declaration was ongoing at the time of the filing of the parent application, and verified results were not available at the time of filing the present application.

The Declaration previously submitted under Dr. Kaufman's signature does show statistical significance. As can be seen in the Table in Exhibit 1 of Dr. Kaufman's previously submitted Declaration, in both the 0.2 mg and 1 mg treatment groups, the change in hair count (HC) was statistically significant (p < 0.05) versus placebo. Further, in each of the 0.2 mg and 1 mg treatment groups, the percent of patients who improved in the hair growth questionnaire (HGQ) was statistically significant (p < 0.05) versus placebo. In each of the 0.2 mg and 1 mg treatment groups, the percent of patients who improved on the investigator clinical assessment (ICA) was also statistically significant (p < 0.05) versus placebo. Lastly, in each of the 0.2 mg and 1 mg treatment groups the percent of patients who improved in the global photographic assessment was statistically significant (p < 0.05) versus placebo.

The previously submitted § 1.132 Declaration by Dr. Kaufman clearly presented data, and stated that the results presented were statistically significant when compared to placebo.

Claims 1, 3 to 7, 19 to 21, and 28 to 30 were rejected under 35 USC § 103 over Metcalf, Diani (1992), Sudduth, Rasmussen (I, II), Petrow, and Orentreich (I-II). The Examiner stated:

[These claims are] clearly motivated by each of: Metcalf, Diani (1992), Sudduth, Rasmussen (I, II), Petrow, and Orentreich (I-II), differing only in the optimum dosage level to obtan the same result, with susceptible balding subjects. No Experts' Declaration has been presented to establish the lack of motivation to reduce the dosages

U.S.S.N.: 08/214,905
Case No.: 191091A
Page No.: 5

described by Rasmussen (I-II) and Petrow and other of the prior art; difference in an expert's expectations from Metcalf's finding in rats, that Diani is a "teaching away" or to omit progesterone and select a type 2 inhibition in Orentreich (I-II). Keith Kaufman's Declaration is silent on each of these points.

Applicants have submitted herewith a second § 1.132 Declaration by Dr. Keith Kaufman. In this Declaration, Dr. Kaufman explains the surprising and unexpected result that a 1 mg dose of finasteride is as clinically efficacious as a 5 mg dose for the treatment of androgenic alopecia, particularly male pattern baldness. This is a particularly surprising result because prior to the present invention, it was known that finasteride was a much more potent inhibitor of the type 2 enzyme than of the type 1 enzyme. The type 2 enzyme was known to predominate in the prostate and the type 1 enzyme was known to predominate in sebaceous glands of skin tissue, including scalp tissue. Further, prior to the present invention, it was known and reported that finasteride at a 5 mg dose produced greater clinical efficacy than 1 mg finasteride in the treatment of benign prostatic hyperplasia (BPH). Thus, if a 1 mg dose was suboptimal for the treatment of BPH, which involved inhibiting the formation of DHT in prostatic tissue, one would have expected that a much larger dose of finasteride would be needed to treat male pattern baldness, which involved sebaceous tissue. Finasteride was known to be a less potent inhibitor of the type 1 enzyme (about 100x worse for type 1 than type 2, based on apparent potency-- the concentration required to produce 50% inhibition). Nevertheless, it was surprisingly found that finasteride was as clinically efficacious at 1 mg as it was at 5 mg in the treatment of male pattern baldness.

In light of the 1.132 Declaration by Dr. Kaufman submitted herewith, the remarks above and the remarks in the previous response, Applicants respectfully request reconsideration and withdrawal of the rejection of Claims 1, 3 to 7, 19 to 21, and 28 to 30 35 USC § 103 over Metcalf, Diani (1992), Sudduth, Rasmussen (I, II), Petrow, and Orentreich (I-II).

U.S.S.N.: 08/214,905
Case No.: 191091A
Page No.: 6

       Applicants respectfully submit that the amendment place the application in condition for allowance or at least in better condition for appeal, and respectfully request entry of the amendments, consideration of the Declaration under 37 C.F.R. § 1.132, and the remarks above. A favorable action by the Examiner is earnestly solicited.

       The Examiner is invited to contact Applicants' attorney at the number below, if such would facilitate the prosecution of this application.

Respectfully submitted,

By _Catherine D. Fitch_
Catherine D. Fitch
Reg. No. 36,502
Attorney for Applicants

Merck & Co., Inc.
P.O. Box 2000
Rahway, NJ 07065-0907
(908) 594-4283

Enclosure
Date: November 13, 1995

# EXHIBIT 8

#11

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicants: G. J. Gormley et al. | |
| Serial No.: 08/214,905    Case No : 19109IA | Art Unit: 1209 |
| Filed:    March 17, 1994 | Examiner: S. Rose |
| For:    METHOD OF TREATING ANDROGENIC ALOPECIA WITH 5-ALPHA REDUCTASE INHIBITORS | |

The Assistant Commissioner for Patents
Washington, D.C. 20231

**DECLARATION UNDER 37 C.F.R. § 1.132**

Sir:

I, Keith D. Kaufman, hereby declare that:

1.    I am currently Director of Clinical Research Endocrinology and Metabolism at Merck & Co., Inc., and have been since January 1994. From October 1991 until the start of my current position, I was Associate Director of Clinical Research Endocrinology and Metabolism at Merck. In such capacity, my primary responsibility is the direction of human clinical trials of Merck drug compounds. One such compound is 17$\beta$-(N-tert-butylcarbamoyl)-4-aza-5$\alpha$-androst-1-en-3-one, which is known generically as finasteride.

Serial No.:  08/214,905
Case No.:    191091A
Page No :    2

2.    My relevant educational background is as follows:
- B.A. (1972) and pre-medicine studies (1977-1979) from Columbia University;
- M.D. (1983) from the University of California, San Francisco School of Medicine.

3.    My academic experience is as follows:
- Internship followed by residency in the area of internal medicine at Johns Hopkins Hospital in Baltimore, MD;
- Fellow, Endocrinology and Metabolism at the University of California, San Francisco Hospitals;
- Associate Investigator, Veterans Administration Medical Center, San Francisco, CA;
- Instructor of Medicine in Residence, University of California, San Francisco School of Medicine.

4.    I have received the following certifications:
Endocrinology and Metabolism (ABIM) (1989); American Board of Internal Medicine (1986); Diplomate, National Board of Medical Examiners; and I received a California Medical License in 1984. I am an elected member of Alpha Omega Alpha since 1983, and a member of the Endocrine Society since 1991.

5.    I have 10 technical publications in the fields of molecular biology and endocrinology; representative publications are as follows:
  (i) Kaufman, K.D., Rapoport, B., Seto, P., Chazenbalk, G.D., Magnusson, R.P., "Generation of recombinant, enzymatically-active human thyroid peroxidase and its recognition by antibodies in the sera of patients with Hashimoto's thyroiditis," *J. Clin. Invest.*, *85*, 617-621 (1989).
  (ii) Foti, D., Kaufman, K.D., Chazenbalk, G.D., Rapoport, B., "Generation of a biologically-active, secreted form of human thyroid peroxidase by site-directed mutagenesis," *Mol. Endocrinol.*, *4*, 786-791 (1990).
  (iii) Rapoport, B., Kaufman, K.D., Chazenbalk, G.D., "Cloning of a member of the arrestin family from a human thyroid cDNA library," *Mol Cell Endocrinol*, *84*, R39-43, (1992).

Serial No.:   08/214,905
Case No.:    191091A
Page No.:    3

I have written three book chapters, including the following: Kaufman, K.D.,
Fitzgerald, P.A., "Endocrine Disorders," Handbook of Medical Treatment, 18th Ed.,
Jones Medical Publications, Greenbrae, CA (1988). I have also been an invited
lecturer for : "New Frontiers with Finasteride," Symposium on Innovative
Approaches to Prostate Cancer, Albert Einstein Medical Center, Philadelphia, PA
(Nov 1992); and "Biology of 5α-Reductase Inhibitors," Yale University School of
Medicine, New Haven, CT (Dec. 1994).

      6.     Exhibit A is a graph showing the Net Hair Count Change from
Baseline for 5 mg and 1 mg finasteride. The data for the 5 mg line were obtained as
follows:

> In a pilot, one-year clinical study evaluating the effect of
> finasteride 5 mg/day vs. placebo in men with male pattern baldness,
> hair counts were obtained from a one inch diameter circle of clipped
> scalp hair centered at the leading edge of the vertex bald area. Data
> were obtained at baseline, Month 6 and Month 12 from
> macrophotographs of the clipped area, which were dot mapped and
> scanned, using computer-assisted image analysis. Hair count is
> expressed as change from baseline, and net hair count change from
> baseline is determined by subtraction of the control group change from
> baseline from that of the finasteride-treated group.

The data for the 1 mg line were obtained as follows:

> The identical procedure was followed for a separate 6 month,
> dose range-finding clinical study evaluating the effect of finasteride 1
> mg, 0.2 mg, and 0.01 mg/day vs. placebo   This study was extended for
> another 6 months (to Month 12) without placebo, but blinded to dose.
> The 0.01 mg dose was subtherapeutic and similar in efficacy to placebo
> at Month 6 and, therefore, the 0.01 mg treatment group served as the
> control group for the two active-treatment (1 mg and 0.2 mg) groups
> through Month 12.

      7.     As can be seen from Exhibit A, the 1 mg/day and 5 mg/day
doses of finasteride appear to be equally effective in the treatment of male pattern
baldness.

Serial No.:  08/214,905
Case No.:   19109IA
Page No.:  4

8.    In October 1993, it was known that 5α-reductase existed in two isomeric forms, type 1 and type 2.  The human type 1 isozyme was known to predominate in sebaceous glands of skin tissue, including scalp tissue.  The human type 2 isozyme was known to predominate in the prostate.  The apparent potency for finasteride (17β-(N-tert-butylcarbamoyl)-4-aza-5α-androst-1-en-3-one) in a fixed time assay, was known to be 4.2 nM for the type 2 isoenzyme, the predominant form in prostate tissue.  The apparent potency for finasteride, under analogous conditions, for the type 1 isoenzyme was known to be 500 nM.  Apparent potency is the concentration required to produce 50% inhibition.

9.    Prior to October 1993, it was known that 5 mg finasteride produced greater clinical efficacy than 1 mg finasteride in the treatment of benign prostatic hyperplasia, and therefore, a 1 mg dose of finasteride was suboptimal for the treatment of benign prostatic hyperplasia.

10    In my opinion, given that finasteride was more than one hundred times less potent in the scalp tissue than it was in prostate tissue, and that there were clinically significant differences in the effectiveness of the 1 mg and 5 mg dose of finasteride for the treatment of benign prostatic hyperplasia, one of ordinary skill in the art would have expected that for the optimal treatment of androgenetic alopecia, including male pattern baldness, a dose of finasteride of at least the therapeutically effective dose used for benign prostatic hyperplasia (5 mg/day) would have been required.

11.    Thus, in my opinion, one of ordinary skill in the art would have found it surprising and unexpected that doses lower than 5 mg, particularly the 1 mg dose of finasteride, appear equally effective to 5 mg in the treatment of male pattern baldness.

12.    I hereby declare further that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or

Serial No.:  08/214,905
Case No.:   19109IA
Page No.:    5

imprisonment, or both, under Section 1001 of Title 18 of the United States Code
and that such willful false statements may jeopardize the validity of the application
or any patent issuing thereon.


Signature:                                                          Date:


_Keith D. Kaufman_                    11-13-95
Keith D. Kaufman



EXHIBIT A

# EXHIBIT 9



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C 20231

| SERIAL NUMBER | | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/111,506    08/17/93 | STEMLEY | G | 1910971A |

12342/1207

ROSE,S
EXAMINER

| ART UNIT | PAPER NUMBER |
|---|---|
| 1205 | |

DATE MAILED: 12/07/95

*Below is a communication from the EXAMINER in charge of this application*

COMMISSIONER OF PATENTS AND TRADEMARKS

## ADVISORY ACTION

☒ THE PERIOD FOR RESPONSE:

a) ☒ is extended to run _____ or continues to run __3 mos__ from the date of the final rejection.

b) ☐ expires three months from the date of the final rejection or as of the mailing date of this Advisory Action, whichever is later. In no event however, will the statutory period for the response expire later than six months from the date of the final rejection.

Any extension of time must be obtained by filing a petition under 37 CFR 1.136(a), the proposed response and the appropriate fee. The date on which the response, the petition, and the fee have been filed is the date of the response and also the date for the purposes of determining the period of extension and the corresponding amount of the fee. Any extension fee pursuant to 37 CFR 1.17 will be calculated from the date of the originally set shortened statutory period for response or as set forth in b) above.

☐ Appellant's Brief is due in accordance with 37 CFR 1.192(a).

☒ Applicant's response to the final rejection, filed __11/17/95__ has been considered with the following effect, but it is not deemed to place the application in condition for allowance:

1. ☒ The proposed amendments to the claim and /or specification will not be entered and the final rejection stands because:

  a. ☐ There is no convincing showing under 37 CFR 1.116(b) why the proposed amendment is necessary and was not earlier presented.

  b. ☐ They raise new issues that would require further consideration and/or search. (See Note).

  c. ☐ They raise the issue of new matter. (See Note).

  d. ☐ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal.

  e. ☐ They present additional claims without cancelling a corresponding number of finally rejected claims.

NOTE: _In view of Dr. Kiell Kaufman's new declaration claims 5 & the elected species could be found patentable if claims 1 and 2 were amended to recite -- mold pattern overlaying -- orally -- bald -- bald or balding sub-person -- and at the claim end-- at least until growth of hair can be detected in the bald spot or bald area by haircount analysis of said bald spot or area -- as elected_

2. ☐ Newly proposed or amended claims _____ would be allowed if submitted in a separately filed amendment cancelling the non-allowable claims.

3. ☒ Upon the filing an appeal, the proposed amendment ☒ will be entered ☐ will not be entered and the status of the claims will be as follows:

  Claims allowed: _all, if amended as suggested above ↑_
  Claims objected to: _____
  Claims rejected: _1 3 & 7  19 & 21  28 & 30_

  However;
  ☐ Applicant's response has overcome the following rejection(s): _____

4. ☒ The affidavit, exhibit or request for reconsideration has been considered but does not overcome the rejection because _claims 1 3 & 7 19&21 and 28 & 30 do not correspond in scope to the elected species and & the statistical significant hair growth findings of the Kaufman Rule 132 Decl'n._

5. ☐ The affidavit or exhibit will not be considered because applicant has not shown good and sufficient reasons why it was not earlier presented.

☐ The proposed drawing correction ☐ has ☐ has not been approved by the examiner.

☐ Other

*Shep Rose*
SHEP K. ROSE
PRIMARY EXAMINER
GROUP 1200

# EXHIBIT 10

JAN-11-1996   12:13                                            P.010

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicants: | G. J. Gormley et al. |
| Serial No.: | 08/214,905  Case No.: 19109IA |
| Filed: | March 17, 1994 |
| For: | METHOD OF TREATING ANDROGENIC ALOPECIA WITH 5-ALPHA REDUCTASE INHIBITORS |

Art Unit:
1205

Examiner:
S. Rose

The Assistant Commissioner for Patents
Box AF
Washington, D.C.  20231



DOCKETED
DEC 2 2 1995
BARBARA REILLY

AMENDMENT UNDER 37 C.F.R. § 1.116

Sir:

        This is in response to the Final Rejection mailed August 14, 1995,
having a Notice of Appeal due Tuesday, November 14, 1995, the telephonic
interview of December 6, 1995, and the Advisory Action of December 7, 1995.
Enclosed herewith is a Petition for a Two-Month Extension of Time together with
the associated fee, extending the date for filing a Notice of Appeal to Monday,
January 15, 1996 (January 14, 1996 being a Sunday).

In the Claims

        Cancel Claims 6, 7 and 8.

        Amend Claim 1 as shown below:

(1.)

JUN-11-1996  12:13                                           P.011

U.S.S.N.: 08/214,905
Case No.: 19109IA
Page No.: 2

1. (Twice Amended) A method of treating [androgenic alopecia] male pattern baldness comprising orally administering to a [person in need of such treatment] male person having a balding area 17β-(N-tert-butylcarbamoyl)-4-aza-5α- androst-1-ene-3-one in a dosage amount from 0.05 to 3.0 mgs/day at least until growth of hair can be detected in the balding area by haircount analysis of the balding area.

Amend Claim 19 as shown below:

19. (Twice Amended) The method of Claim [7] 1 wherein the dosage amount is about 0.2 mg/day.

(Amend Claim 20 as shown below:)

20. (Twice Amended) The method of Claim [7] 1 wherein the dosage amount is about 0.05 mg/day.

(Amend Claim 21 as shown below:)

21. (Twice Amended) A method of arresting and reversing [androgenic alopecia] male pattern baldness comprising orally administering to a [person in need of such treatment] bald or balding male person having a balding area 17β-(N-tert-butylcarbamoyl)-4-aza-5α- androst-1-ene-3-one in a dosage amount from 0.05 to 3.0 mgs/day at least until growth of hair can be detected in the balding or area by haircount analysis of the balding area.

## REMARKS

Reconsideration of the application, and entry of the amendment above are respectfully requested.

Claims 1, 3 to 8, 19 to 21 and 28 to 30 were pending in the present application. Claim 8 was withdrawn from consideration subject to a restriction requirement. Claims 1, 3 to 7, 19 to 21 and 28 to 30 were rejected. Claims 6, 7,

JAN-11-1996  12:13                                                    P.012

U.S.S.N.: 08/214,905
Case No.: 19109IA
Page No.: 3

and 8 have been canceled.  Currently, Claims 1, 3 to 5, 19 to 21, and 28 to 30 are under consideration.

The Examiner had required an election of a single disclosed species of (a) active agent, (b) route of administration, (c) alopecia and (d) sex of person under 35 U.S.C. § 121.

Applicants had elected the following:

(a) active agent is finasteride (17β-(N-tert.-butylcarbamoyl)-4-aza-5α-androst-1-ene-3-one) specifically claimed in Claim 11;

(b) route of administration is oral, specifically claimed in Claim 7;

(c) type of alopecia is male pattern baldness, specifically claimed in Claim 6; and

(d)     sex of patient is male.

The present amendment places the claims in conformance with the elected species and the statistically significant hair growth findings of the Kauffman declaration submitted with the November 14, 1995 response (not entered.)

Claims 1 and 21 have been amended to refer to the type of androgenic alopecia elected for examination, male pattern baldness, as specifically claimed in originally filed Claim 6.  These claims have been amended to refer to the oral route of administration, as specifically claimed in originally filed Claim 7, and in the specification at page 5, line 15.  They have further been amended to specify the subject to be treated, a bald or balding male person having a balding area.  Support for this amendment is found on page 14, line 32, and on page 12, line 33 and page 13, line 3.  The claims have further been amended to specify that the method be employed at least until the growth of hair can be detected in the balding area by

JAN-11-1996  12:14                                                P.013

.

             U.S.S.N.: 08/214,905
             Case No.: 19109IA
             Page No.: 4

haircount analysis of the balding area.  Support for this amendment is found in the
specification in Example 4, on pages 12 to 14.

   Claims 6 and 7 have been canceled because the limitations of these
claims have been incorporated into Claim 1.

   Claim 8 has been canceled in response to the election of species, as
being drawn to the non-elected topical method of treatment.

   Claims 19 and 20 have been amended to depend from Claim 1, in
place of canceled Claim 7.  Amended Claim 1 incorporates the limitations of
canceled Claim 7.

   The Examiner is invited to contact Applicants' attorney at the number
below, if such would facilitate the prosecution of this application.

         Respectfully submitted,

         By _Catherine D. Fitch_
         Catherine D. Fitch
         Reg. No. 36,502
         Attorney for Applicants

         Merck & Co., Inc.
         P.O. Box 2000
         Rahway, NJ 07065-0907
         (908) 594-4283

Date:  December 22, 1995

                 TOTAL P.013

# EXHIBIT 11



∠ T.
2-22-96

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|

19109IA

| EXAMINER |
|---|
| ROSE,S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1205 | 15 |

DATE MAILED: 02/22/96

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☒ This communication is responsive to _JAN 11  1996 amendment_

2. ☐ All the claims being allowable. PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed). a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.

3. ☒ The allowed claims are __ 1 3C5 19z2/ 28538 __

4. ☐ The drawings filed on ___ ____ ___ are acceptable.

5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [...] been received [...] not been received [ ] been filed in parent application Serial No. _____ filed on _____

6. ☐ Note the attached Examiner's Amendment

7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.

8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☒ Note the attached NOTICE OF REFERENCES CITED, PTO-892.

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☐ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER

   a. ☐ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No ___ ___. CORRECTION IS REQUIRED.

   b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner CORRECTION IS REQUIRED.

   c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.

   d. ☐ Formal drawings are now REQUIRED.

Any response to this letter should include in the upper right hand corner. the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER. DATE OF THE NOTICE OF ALLOWANCE. AND SERIAL NUMBER

**Attachments:**
_ Examiner's Amendment
_ Examiner Interview Summary Record. PTOL-413
_ Reasons for Allowance
X Notice of References Cited. PTO-892
_ Information Disclosure Citation. PTO-1449

_ Notice of Informal Application. PTO-152
_ Notice re Patent Drawings. PTO-948
_ Listing of Bonded Draftsmen
_ Other

Shep Rose

SHEP K. ROSE
PRIMARY EXAMINER
GROUP 1200

PTOL-37 (REV. 4-89) ●

USCOMM-DC 89-3789