EXHIBIT 1

PART 2





Other uses for the baffles are listed in the specification as well. In Figure 7, the overlapping flanges "provide for overlapping and interlocking the baffles to produce substantially an intermediate barrier wall between the opposite [wall] faces":



'798 patent, col. 5, ll. 26-29. Those baffles thus create small compartments that can be filled with either sound and thermal insulation or rock and gravel to stop projectiles. Id.,

03-1269, -1286                34

col. 5, ll. 29-34.  By separating the interwall area into compartments (see, e.g., compartment 55 in Figure 7), the user of the modules can choose different types of material for each compartment, so that the module can be "easily custom tailored for the specific needs of each installation."  Id., col. 5, ll. 36-37.  When material is placed into the wall during installation, the baffles obstruct the flow of material from one compartment to another so that this "custom tailoring" is possible.

The fact that the written description of the '798 patent sets forth multiple objectives to be served by the baffles recited in the claims confirms that the term "baffles" should not be read restrictively to require that the baffles in each case serve all of the recited functions.  We have held that "[t]he fact that a patent asserts that an invention achieves several objectives does not require that each of the claims be construed as limited to structures that are capable of achieving all of the objectives."  Liebel-Flarsheim, 358 F.3d at 908; see also Resonate Inc. v. Alteon Websystems, Inc., 338 F.3d 1360, 1367 (Fed. Cir. 2003).  Although deflecting projectiles is one of the advantages of the baffles of the '798 patent, the patent does not require that the inward extending structures always be capable of performing that function.  Accordingly, we conclude that a person of skill in the art would not interpret the disclosure and claims of the '798 patent to mean that a structure extending inward from one of the wall faces is a "baffle" if it is at an acute or obtuse angle, but is not a "baffle" if it is disposed at a right angle.

B

Invoking the principle that "claims should be so construed, if possible, as to sustain their validity," Rhine v. Casio, Inc., 183 F.3d 1342, 1345 (Fed Cir. 1999), AWH

03-1269, -1286                              35

argues that the term "baffles" should be given a restrictive meaning because if the term is not construed restrictively, the asserted claims would be invalid.

While we have acknowledged the maxim that claims should be construed to preserve their validity, we have not applied that principle broadly, and we have certainly not endorsed a regime in which validity analysis is a regular component of claim construction. See Nazomi Communications, 403 F.3d at 1368-69. Instead, we have limited the maxim to cases in which "the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous." Liebel-Flarsheim, 358 F.3d at 911; see also Generation II Orthonics Inc. v. Med. Tech. Inc., 263 F.3d 1356, 1365 (Fed. Cir. 2001) ("[C]laims can only be construed to preserve their validity where the proposed claim construction is 'practicable,' is based on sound claim construction principles, and does not revise or ignore the explicit language of the claims."); Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc., 214 F.3d 1302, 1309 (Fed. Cir. 2000) ("having concluded that the amended claim is susceptible of only one reasonable construction, we cannot construe the claim differently from its plain meaning in order to preserve its validity"); E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1434 (Fed. Cir. 1988) (rejecting argument that limitations should be added to claims to preserve the validity of the claims). In such cases, we have looked to whether it is reasonable to infer that the PTO would not have issued an invalid patent, and that the ambiguity in the claim language should therefore be resolved in a manner that would preserve the patent's validity.

That is the rationale that gave rise to the maxim in the first place. In Klein v. Russell, 86 U.S. (19 Wall.) 433, 466 (1873), the owner of a reissued patent argued for a

narrow construction of the patent, while the accused infringer argued for a broader construction. The Court noted that the law "required that the reissue should be for the same invention as the original patent." Id. Because the reissue, which was granted under the predecessor to 35 U.S.C. § 251, would have been improper under the broader construction, the Court "presumed the Commissioner did his duty" and did not issue an invalid patent. For that reason, among others, the Court construed the disputed claim language in a manner that "sustain[ed] the patent and the construction claimed by the patentee," since that "can be done consistently with the language which he has employed." Id. The applicability of the doctrine in a particular case therefore depends on the strength of the inference that the PTO would have recognized that one claim interpretation would render the claim invalid, and that the PTO would not have issued the patent assuming that to be the proper construction of the term.

In this case, unlike in Klein and other cases in which the doctrine of construing claims to preserve their validity has been invoked, the claim term at issue is not ambiguous. Thus, it can be construed without the need to consider whether one possible construction would render the claim invalid while the other would not. The doctrine of construing claims to preserve their validity, a doctrine of limited utility in any event, therefore has no applicability here.

In sum, we reject AWH's arguments in favor of a restrictive definition of the term "baffles." Because we disagree with the district court's claim construction, we reverse the summary judgment of noninfringement. In light of our decision on claim construction, it is necessary to remand the infringement claims to the district court for further proceedings.

03-1269, -1286                37

V

With respect to Mr. Phillips's allegation of misappropriation of trade secrets, we agree with the panel's decision upholding the district court's ruling on that issue, in which the district court dismissed the trade secret claim on statute of limitations grounds.  See Phillips, 363 F.3d at 1214-1216.  Accordingly, based on the panel's disposition of that issue, we affirm the district court's dismissal of the trade secret claim. With respect to AWH's cross-appeal, we also agree with the panel's reasoning and its conclusion that the cross-appeal is improper.  See id. at 1216.  We therefore dismiss the cross-appeal.

VI

In our order granting rehearing en banc, we asked the parties to brief various questions, including the following:  "Consistent with the Supreme Court's decision in Markman v. Westview Instruments, 517 U.S. 370 (1996), and our en banc decision in Cybor Corp. v. FAS Technologies, Inc., 138 F.3d 1448 (Fed. Cir. 1998), is it appropriate for this court to accord any deference to any aspect of trial court claim construction rulings? If so, on what aspects, in what circumstances, and to what extent?"  After consideration of the matter, we have decided not to address that issue at this time.  We therefore leave undisturbed our prior en banc decision in Cybor.

Each party shall bear its own costs for this appeal.

AFFIRMED IN PART, REVERSED IN PART, DISMISSED IN PART, and REMANDED.

# *United States Court of Appeals for the Federal Circuit*

03-1269,-1286

EDWARD H. PHILLIPS,

Plaintiff-Appellant,

v.

AWH CORPORATION,
HOPEMAN BROTHERS, INC., and LOFTON CORPORATION,

Defendants-Cross Appellants.

LOURIE, <u>Circuit Judge</u>, concurring in part and dissenting in part, with whom NEWMAN, <u>Circuit Judge</u>, joins.

I fully join the portion of the court's opinion resolving the relative weights of specification and dictionaries in interpreting patent claims, in favor of the specification. I could elaborate more expansively on that topic, but Judge Bryson's opinion for the majority says it so well, there is little reason for me to repeat its truths. I also agree with the court that claims need not necessarily be limited to specific or preferred embodiments in the specification, although they are limited to what is contained in the overall disclosure of the specification.

However, I do dissent from the court's decision to reverse and remand the district court's decision. The original panel decision of this court, which implicitly decided the case based on the priorities that the en banc court has now reaffirmed, interpreted the claims in light of the specification and found that the defendant did not infringe the

claims.  We affirmed the district court, which had arrived at a similar conclusion.  The dissent from the panel decision relied on the "dictionaries first" procedure, which the court now has decided not to follow.  Thus, while the claim construction issue had to be decided by the en banc court, I see no reason for the court, having reaffirmed the principle on which the district judge and the panel originally decided the case, to send it back for further review.

The court premises its reverse-and-remand decision on the concept of claim differentiation and the reasoning that the contested term "baffle" need not fulfill all of the functions set out for it in the specification.  Reasonable people can differ on those points.  However, the court did not take this case en banc because the full court differed with the panel majority on those disputable criteria.  It did so to resolve the claim construction issue, which it has now done so well.  Having done so, I believe that it should simply affirm the district court's decision on the merits, consistently with that court's rationale and that of the panel that affirmed the district court, which it now adopts.

I will not critique in detail particular statements the majority makes in rationalizing its reversal of the district court's decision, such as "that a person of skill in the art would not interpret the disclosure and claims of the '798 patent to mean that a structure extending inward from one of the wall faces is a 'baffle' if it is at an acute or obtuse angle, but is not a 'baffle' if it is disposed at a right angle," or that "the patent does not require that the inward extending structures always be capable of performing that function [deflecting projectiles]" in order to be considered 'baffles'.

03-1269,-1286                              2

I will simply point out that the specification contains no disclosure of baffles at right angles. Moreover, as the majority correctly states, a patent specification is intended to describe one's invention, and it is essential to read a specification in order to interpret the meaning of the claims. This specification makes clear that the "baffles" in this invention are angled. There is no reference to baffles that show them to be other than angled. The abstract refers to "bullet deflecting . . . baffles." Only angled baffles can deflect. It then mentions "internal baffles at angles for deflecting bullets." That could not be clearer. The specification then refers several times to baffles, often to figures in the drawings, all of which are to angled baffles. A compelling point is that the only numbered references to baffles (15, 16, 26, 27, 30, and 31) all show angled baffles.

The specification further states that steel panels "form the internal baffles at angles for deflecting bullets." It states that the baffles are "disposed at such angles that bullets which might penetrate the outer steel panels are deflected." It explains that if bullets "were to penetrate the outer steel wall, the baffles are disposed at angles which tend to deflect the bullets." There is no specific reference in this patent to a baffle that is not angled at other than 90°.

While, as the majority states, the specification indicates that multiple objectives are achieved by the invention, none of the other objectives is dependent upon whether the baffles are at other than a 90° angle, whereas the constantly stated objective of deflection of bullets is dependent upon such an angle.

Finally, even though claim construction is a question of law, reviewable by this court without formal deference, I do believe that we ought to lean toward affirmance of a claim construction in the absence of a strong conviction of error. I do not have such a

03-1269,-1286                           3

conviction in this case, after considering the district court's opinion and the patent specification.

For these reasons, while I wholeheartedly join the majority opinion in its discussion and resolution of the "specification v. dictionaries" issue, I would affirm the decision below.

# United States Court of Appeals for the Federal Circuit

03-1269, -1286

EDWARD H. PHILLIPS,

Plaintiff-Appellant,

v.

AWH CORPORATION,
HOPEMAN BROTHERS, INC., and LOFTON CORPORATION,

Defendants-Cross Appellants.

MAYER, Circuit Judge, with whom NEWMAN, Circuit Judge, joins, dissenting.

Now more than ever I am convinced of the futility, indeed the absurdity, of this court's persistence in adhering to the falsehood that claim construction is a matter of law devoid of any factual component. Because any attempt to fashion a coherent standard under this regime is pointless, as illustrated by our many failed attempts to do so, I dissent.

This court was created for the purpose of bringing consistency to the patent field. See H.R. Rep. No. 312, 97th Cong., 1st Sess. 20-23 (1981). Instead, we have taken this noble mandate, to reinvigorate the patent and introduce predictability to the field, and focused inappropriate power in this court. In our quest to elevate our importance, we have, however, disregarded our role as an appellate court; the resulting mayhem has seriously undermined the legitimacy of the process, if not the integrity of the institution.

In the name of uniformity, <u>Cybor Corp. v. FAS Technologies, Inc.</u>, 138 F.3d 1448 (Fed. Cir. 1998) (en banc), held that claim construction does not involve subsidiary or underlying questions of fact and that we are, therefore, unbridled by either the expertise or efforts of the district court.[1]  What we have wrought, instead, is the substitution of a black box, as it so pejoratively has been said of the jury, with the black hole of this court. Out of this void we emit "legal" pronouncements by way of "interpretive necromancy"[2]; these rulings resemble reality, if at all, only by chance.  Regardless, and with a blind eye to the consequences, we continue to struggle under this irrational and reckless regime, trying every alternative—dictionaries first, dictionaries second, never dictionaries, etc., etc., etc.

Again today we vainly attempt to establish standards by which this court will interpret claims.  But after proposing no fewer than seven questions, receiving more than thirty <u>amici curiae</u> briefs, and whipping the bar into a frenzy of expectation, we say nothing new, but merely restate what has become the practice over the last ten years— that we will decide cases according to whatever mode or method results in the outcome we desire, or at least allows us a seemingly plausible way out of the case.  I am not surprised by this.  Indeed, there can be no workable standards by which this court will interpret claims so long as we are blind to the factual component of the task.  <u>See</u>

---

[1]    The Supreme Court did not suggest in affirming <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967 (1995) (en banc), that claim construction is a purely legal question.  517 U.S. 370 (1996).  It held only that, as a policy matter, the judge, as opposed to the jury, should determine the meaning of a patent claim.  <u>See Cybor</u>, 138 F.3d at 1464 (Mayer, C.J., dissenting) (explaining that "the [Supreme] Court chose not to accept our formulation of claim construction: as a pure question of law to be decided <u>de novo</u> in all cases on appeal").

[2]    <u>See The Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.</u>, 535 U.S. 826, 833 (2002).

Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990) ("Fact-bound resolutions cannot be made uniform through appellate review, de novo or otherwise." (quoting Mars Steel Corp. v. Cont'l Bank N.A., 880 F.2d 928, 936 (7th Cir.1989))).[3]

Federal Rule of Civil Procedure 52(a) states that "[f]indings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of witnesses." According to the Supreme Court, this "[r]ule means what it says"—that findings of fact, even "those described as 'ultimate facts' because they may determine the outcome of litigation," are to be reviewed deferentially on appeal.[4]   Bose Corp. v. Consumers Union of United States,

---

[3]     The question asked but not answered by the court which might have allowed it to cure its self-inflicted wound was: "Question 7. Consistent with the Supreme Court's decision in Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996) and our en banc decision in Cybor Corp. v. FAS Technologies, Inc., 138 F.3d 1448 (Fed. Cir. 1998), is it appropriate for this court to accord any deference to any aspect of trial court claim construction rulings?  If so, on what aspects, in what circumstances, and to what extent?"

[4]     Because some facts are so intertwined with a constitutional standard the Supreme Court has held that de novo review is appropriate. For example, whether a defendant has acted with actual malice in a defamation suit is reviewed de novo because, among other reasons, the scope of the First Amendment is shaped and applied by reference to such factual determinations. Bose, 466 U.S. at 502 ("[T]he content of the rule is not revealed simply by its literal text, but rather is given meaning through the evolutionary process of common-law adjudication."). Similarly, whether there is reasonable suspicion to conduct an investigatory stop or probable cause to perform a search under the Fourth Amendment are reviewed without deference. Ornelas v. United States, 517 U.S. 690, 696 (1996) (holding that the protections afforded by the Fourth Amendment are "fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed"). The reasoning behind these limited exceptions surely does not apply to claim construction. While appearing from the perspective of this court's limited sphere of influence to be dreadfully important, claim construction does not implicate a constitutional value. Cf. Bose, 466 U.S. at 502 ("[T]he constitutional values protected by the rule make it imperative that judges—and in some cases judges of [the Supreme] Court—make sure that it is correctly applied."). This is illustrated by the fact that the outcome of a patent case, unlike a defamation or illegal search case, has little impact on how future cases

466 U.S. 485, 498 & 501 (1984); see also Anderson v. Bessemer City, 470 U.S. 564, 575 (1985) ("[R]eview of factual findings under the clearly-erroneous standard—with its deference to the trier of fact—is the rule, not the exception."); Pullman-Standard v. United Steel Workers of Am., 456 U.S. 273, 287 (1982) ("Rule 52(a) broadly requires that findings of fact not be set aside unless clearly erroneous."); United States v. United States Gypsum Co., 333 U.S. 364, 394 (1948). Even those findings of fact based entirely on documentary evidence are entitled to deference. Anderson, 470 U.S. at 574 ("That [Rule 52(a)] goes on to emphasize the special deference to be paid credibility determinations does not alter its clear command: Rule 52(a) 'does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous.'" (quoting Pullman-Standard, 456 U.S. at 287)). In short, we are obligated by Rule 52(a) to review the factual findings of the district court that underlie the determination of claim construction for clear error.

While this court may persist in the delusion that claim construction is a purely legal determination, unaffected by underlying facts, it is plainly not the case. Claim construction is, or should be, made in context: a claim should be interpreted both from the perspective of one of ordinary skill in the art and in view of the state of the art at the time of invention. See Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1477

---

are decided or on how future parties behave. Cf. id. at 501 n.17 ("Regarding certain largely factual questions in some areas of the law, the stakes—in terms of impact on future cases and future conduct—are too great to entrust them finally to the judgment of the trier of fact."). Even if claim construction did implicate a constitutional value, it, unlike the decisions underlying the First and Fourth Amendments, could readily be reduced, when distinguished from its factual underpinnings, to "a neat set of legal rules." Ornelas, 517 U.S. at 695-96 (quoting Ill. v. Gates, 462 U.S. 213, 232 (1983)).

(Fed. Cir. 1998) ("It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed."). These questions, which are critical to the correct interpretation of a claim, are inherently factual. They are hotly contested by the parties, not by resort to case law as one would expect for legal issues, but based on testimony and documentary evidence.[5] During so called <u>Markman</u> "hearings," which are often longer than jury trials, parties battle over experts offering conflicting evidence regarding who qualifies as one of ordinary skill in the art; the meaning of patent terms to that person; the state of the art at the time of the invention; contradictory dictionary definitions and which would be consulted by the skilled artisan; the scope of specialized terms; the problem a patent was solving; what is related or pertinent art; whether a construction was disallowed during prosecution; how one of skill in the art would understand statements during prosecution; and on and on. In order to reconcile the parties' inconsistent submissions and arrive at a sound interpretation, the district court is required to sift through and weigh volumes of evidence. While this court treats the district court as an intake clerk, whose only role is to collect, shuffle and collate evidence, the reality, as revealed by conventional practice, is far different.

Even if the procedures employed by the district court did not show that it is engaging in factfinding, the nature of the questions underlying claim construction illustrate that they are factual and should be reviewed in accordance with Rule 52(a). For each patent, for example, who qualifies as one of ordinary skill in the art will differ,

---

[5]     That most of the cases now appealed to this court are "summary judgments" is irrelevant. We have artificially renamed findings of fact as legal conclusions; the district courts have dutifully conformed to our fictional characterization, but this does not change the inherent nature of the inquiry. Of course, if the parties do not dispute the material facts, summary judgment is appropriate.

just as the state of the art at the time of invention will differ. These subsidiary determinations are specific, multifarious and not susceptible to generalization; as such their resolution in one case will bear very little, if at all, on the resolution of subsequent cases. See Ornelas, 517 U.S. at 703 ("Law clarification requires generalization, and some issues lend themselves to generalization much more than others."); Pierce v. Underwood, 487 U.S. 552, 561-62 (1988) ("Many questions that arise in litigation are not amenable to regulation by rule because they involve multifarious, fleeting, special, narrow facts that utterly resist generalization." (quoting Maurice Rosenberg, Judicial Discretion of the Trial Court, Viewed from Above, 22 Syracuse L. Rev. 635, 662 (1971))); Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986) (rejecting de novo review of factual questions, even when outcome determinative). That the determination of the meaning of a particular term in one patent will not necessarily bear on the interpretation of the same term in a subsequent patent illustrates this point; while the term is the same, the underlying factual context is different. It further proves that these questions (e.g., who qualifies as one of ordinary skill in the art and what was the state of the art at the time of invention, among others) are implicitly being determined in each case; because we refuse to acknowledge either their existence or importance, however, the manner of their resolution is never elucidated. Finally, that claim construction is dependent on underlying factual determinations has been verified by our experience, which shows that reviewing these questions de novo has not clarified the law, but has instead "distort[ed] the appellate process," causing confusion among the district courts and bar. See Cooter, 496 U.S. at 404 (quoting Pierce, 487 U.S. at 561); see also Koon v. United States, 518 U.S. 81, 99 (1996).

Our purely de novo review of claim interpretation also cannot be reconciled with the Supreme Court's instructions regarding obviousness. While ultimately a question of law, obviousness depends on several underlying factual inquiries. Graham v. John Deere Co., 383 U.S. 1, 17 (1966); see also Dennison Mfg. Co. v. Panduit Corp., 475 U.S. 809, 811 (1986) (holding that Rule 52(a) requires that the district court's subsidiary factual determinations should be reviewed for clear error); cf. Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 336 U.S. 271, 275 (1949) (holding that validity, while ultimately a question of law, is founded on factual determinations that are entitled to deference). "Under [section] 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." Graham, 383 U.S. at 17.

To a significant degree, each of these factual inquiries is also necessary to claim construction. Before beginning claim construction, "the scope and content of the prior art [should] be determined," id., to establish context. The "differences between the prior art and the claims at issue [should] be ascertained," id., to better define what the inventor holds out as the invention. And, the foundation for both the obviousness and claim construction determinations is "the level of ordinary skill in the pertinent art." Id.; see Multiform, 133 F.3d at 1477. These underlying factual considerations receive the level of deference due under Rule 52(a) when considering obviousness, but they are scrutinized de novo in the claim construction context. As directed by the Supreme Court, however, it is especially important in the patent field, "where so much depends upon familiarity with specific scientific problems and principles not usually contained in the general storehouse of knowledge and experience," to give deference to the district

court's findings of fact. <u>Graver Tank & Mfg. Co. v. Linde Air Prods. Co.</u>, 339 U.S. 605, 609-10 (1950).

While the court flails about in an attempt to solve the claim construction "conundrum," the solution to our plight is straightforward. We simply must follow the example of every other appellate court, which, regarding the vast majority of factual questions, reviews the trial court for clear error.[6] This equilibrium did not come about as the result of chance or permissive appellate personalities, but because two centuries of experience has shown that the trial court's factfinding ability is "unchallenged." <u>Salve Regina Coll. v. Russell</u>, 499 U.S. 225, 233 (1991); <u>Inwood</u>, 456 U.S. at 856 ("Determining the weight and credibility of the evidence is the special province of the trier of fact."). Time has similarly revealed that it is more economical for the district court to find facts. <u>Pierce</u>, 487 U.S. at 560 ("Moreover, even where the district judge's full knowledge of the factual setting can be acquired by the appellate court, that acquisition will often come at unusual expense, requiring the court to undertake the unaccustomed task of reviewing the entire record . . . .").

Therefore, not only is it more efficient for the trial court to construct the record, the trial court is <u>better</u>, that is, more accurate, by way of both position and practice, at finding facts than appellate judges. <u>Anderson</u>, 470 U.S. at 574 ("The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience on fulfilling that role comes expertise."); <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 123 (1969). Our rejection

---

<span>6</span>   While jurisprudentially sound, the bar also supports this proposition, as evident by the many <u>amici curiae</u> briefs urging adherence to Rule 52(a).

03-1269,-1286                    8

of this fundamental premise has resulted, not surprisingly, in several serious problems, including increased litigation costs, needless consumption of judicial resources, and uncertainty, as well as diminished respect for the court and less "decisional accuracy." Salve, 499 U.S. at 233. We should abandon this unsound course.[7]

If we persist in deciding the subsidiary factual components of claim construction without deference, there is no reason why litigants should be required to parade their evidence before the district courts or for district courts to waste time and resources evaluating such evidence. It is excessive to require parties, who "have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one," to "persuade three more judges at the appellate level." Anderson, 470 U.S. at 575. If the proceedings before the district court are merely a "tryout on the road," id. (quoting Wainwright v. Sykes, 433 U.S. 72, 90 (1977)), as they are under our current regimen, it is wasteful to require such proceedings at all. Instead, all patent cases could be filed in this court; we would determine whether claim construction is necessary, and, if so, the meaning of the claims. Those few cases in which claim construction is not dispositive can be remanded to the district court for trial. In this way, we would at least eliminate the time and expense of the charade currently played out before the district court.

Eloquent words can mask much mischief. The court's opinion today is akin to rearranging the deck chairs on the Titanic—the orchestra is playing as if nothing is amiss, but the ship is still heading for Davey Jones' locker.

---

[7]    There are some scenarios where it is difficult to weed facts from law, see Pullman-Standard, 456 U.S. at 288, but claim construction is not one of them.

# United States Court of Appeals for the Federal Circuit

<u>ERRATUM</u>

July 14, 2005

Appeal No. 03-1269,-1286

<u>Phillips v. AWH Corp.</u>

Decided:  July 12, 2005                                  Precedential Opinion

Change the opinion as follows:

On page 28, at line 15 of the text, change "the dictionary definition does contradict any definition found in" to "the dictionary definition does not contradict any definition found in"