# EXHIBIT H



#9
JRP
5/23/05

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicants: G. J. Gormley et al. | |
| Serial No.: 08/214,905          Case No.: 19109IA | Art Unit: 1209 |
| Filed:    March 17, 1994 | |
| For:    METHOD OF TREATING ANDROGENIC ALOPECIA WITH 5-ALPHA REDUCTASE INHIBITORS | Examiner: S. Rose |

The Honorable Commissioner of Patents and Trademarks
Washington, D.C. 20231

<u>**DECLARATION UNDER 37 C.F.R. § 1.132**</u>

Sir:

I, Keith D. Kaufman, hereby declare that:

1.     I am currently Director of Clinical Research Endocrinology and Metabolism at Merck & Co., Inc., and have been since January 1994. From October 1991 until the start of my current position, I was Associate Director of Clinical Research Endocrinology and Metabolism at Merck. In such capacity, my primary responsibility is the direction of human clinical trials of Merck drug compounds. One such compound is 17β-(N-tert-butylcarbamoyl)-4-aza-5α-androst-1-en-3-one, which is known generically as finasteride.

2.     My relevant educational background is as follows:

Serial No.:   08/214,905
Case No.:    19109IA
Page No.:  · 2

- B.A. (1972) and pre-medicine studies (1977-1979) from Columbia University;
- M.D. (1983) from the University of California, San Francisco School of Medicine .

    3.    My academic experience is as follows:
- Internship followed by residency in the area of internal medicine at Johns Hopkins Hospital in Baltimore, MD;
- Fellow, Endocrinology and Metabolism at the University of California, San Francisco Hospitals;
- Associate Investigator, Veterans Administration Medical Center, San Francisco, CA;
- Instructor of Medicine in Residence, University of California, San Francisco School of Medicine.

    4.    I have received the following certifications: Endocrinology and Metabolism (ABIM) (1989); American Board of Internal Medicine (1986); Diplomate, National Board of Medical Examiners; and I received a California Medical License in 1984. I am an elected member of Alpha Omega Alpha since 1983, and a member of the Endocrine Society since 1991.

    5. I have 10 technical publications in the fields of molecular biology and endocrinology; representative publications are as follows:
    (i) Kaufman, A.D., Rapoport, B., Seto, P., Chazenbalk, G.D., Magnusson, R.P., "Generation of recombinant, enzymatically-active human thyroid peroxidase and its recognition by antibodies in the sera of patients with Hashimoto's thyroiditis," *J. Clin. Invest., 85,* 617-621 (1989).
    (ii) Foti, D., Kaufman, K.D., Chazenbalk, G.D., Rapoport, B., "Generation of a biologically-active, secreted form of human thyroid peroxidase by site-directed mutagenesis," *Mol. Endocrinol., 4,* 786-791 (1990).
    (iii) Rapoport, B., Kaufman, K.D., Chazenbalk, G.D., "Cloning of a member of the arrestin family from a human thyroid cDNA library," *Mol Cell Endocrinol., 84,* R39-43, (1992).

Serial No.: 08/214,905
Case No.: 19109IA
Page No.: 3

I have written three book chapters, including the following: Kaufman, K.D., Fitzgerald, P.A., "Endocrine Disorders," Handbook of Medical Treatment, 18th Ed., Jones Medical Publications, Greenbrae, CA (1988). I have also been an invited lecturer for : "New Frontiers with Finasteride," Symposium on Innovative Approaches to Prostate Cancer, Albert Einstein Medical Center, Philadelphia, PA (Nov. 1992); and "Biology of 5α-Reductase Inhibitors," Yale University School of Medicine, New Haven, CT (Dec. 1994).

6.     I have read and understand the above-captioned application. I have read and understand the outstanding rejection mailed December 8, 1994, for the above-captioned application.

## CLINICAL STUDY

7.     The compound finasteride has already been approved by the FDA for the treatment of benign prostatic hyperplasia and is currently marketed for such use in the United States under the tradename Proscar®.

8.     A 6 month, randomized, placebo-controlled, multi-center clinical study was completed in October 1994 to determine the effects of low doses of finasteride in men with male pattern baldness. Male pattern baldness is another name for androgenic alopecia in men. The condition termed androgenic alopecia is also more currently known and referred to as androgenetic alopecia.

9.     A summary of the methods and preliminary results of the clinical study is shown in Exhibit 1. Exhibits 2-4 describe the methodology used for each of the four efficacy endpoints described in Exhibit 1. The global photographic assessment results in Exhibit 1 reflect the preliminary data from one investigator.

10.     Approximately 450 male patients were randomized to receive finasteride 1 mg, 0.2 mg , 0.01 mg per day or placebo over a period of 6 months. All patients had Hamilton classification III vertex or IV male pattern baldness. The vertex is the crown area of the back of the head where many balding men

Serial No.:  08/214,905
Case No.:   19109IA
Page No.:   4

have thinning hair. Four methods were used to determine the results of the study: macrophotographic haircount, global photographic assessment, investigator assessment of clinical change, and patient self-assessment via a self-administered hair growth questionnaire. The protocols for the macrophotographic haircount and the global photographic assessment are outlined in Exhibits 1 and 4. Results are summarized in chart format in Exhibit 1.

11.    For macrophotographic haircount, results were obtained in a 1 inch diameter circle of scalp hair at 3 months and 6 months. At 6 months, patients receiving finasteride 1 mg or 0.2 mg showed a mean increase in haircount from baseline of 77.4 and 61.4 hairs respectively. The group receiving placebo or 0.01 mg finasteride had virtually no change in haircount from baseline during the same period; rather they showed a decrease of approximately 7 and 3 hairs, respectively. (See Exhibit 1).

12.    Global photographic assessments were performed at 3 and 6 months by placing each patient in a stereotactic device and taking a color slide of the vertex area. Patients were rated on hair growth on a 7 point scale from "greatly decreased" to "greatly increased" by comparing baseline and follow-up dual-projected slides. Fifty-six percent of patients treated with 1 mg finasteride and thirty-four percent of patients treated with 0.2 mg finasteride showed increased hair growth in this evaluation at 6 months. The results showed a significant difference in hair growth assessment between these finasteride-treated groups and the 0.01 mg finasteride or placebo-treated groups. (See Exhibit 1).

13.    A self-administered questionnaire was used to evaluate patient self assessment at 3 and 6 months. As seen in Exhibit 1, 54% or 48% of patients treated with finasteride 1 mg or 0.2 mg, respectively, felt their treatment was efficacious in producing a better appearance of their hair as compared to baseline. To a significant degree, fewer placebo-treated patients or patients receiving 0.01 mg finasteride felt the treatment was efficacious in producing a better appearance of their hair.

Serial No.:  08/214,905
Case No.:  19109IA
Page No.:  5

14.     Based on the results from the study described above, it is my opinion that low-dose finasteride is useful for the treatment of androgenetic alopecia in humans.

15.     I hereby declare further that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United Stated Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

Signature:                                              Date:

Keith D. Kaufman                                    5/3/95

attachments: Exhibits 1-4

**Exhibit 1**

## THE ENDOCRINE SOCIETY • 1995 ABSTRACT FORM
USE ORIGINAL FORM ONLY • DO NOT FOLD

DR. KEITH KAUFMAN

MERCK RESEARCH LABS, 485 ROUTE 1 SO.,
ISELIN, NJ 08830

Telephone: 908-750-8486     Fax: 908-750-8087
(Include country and city code on non-US phone and fax.)

AWARDS
Apply for only one award
State qualifications on reverse and check only if criteria apply
☐ "BOOTS THYROID RESEARCH CLINICAL TRAINING PROGRAM AWARD"
☐ "MERCK SENIOR FELLOWS AWARD"
☐ TRAVEL GRANT AWARDS

**Receipt Deadline January 27, 1995**

Total amount to be accompanied by a $37.00 US Funds only and must otherwise be for processing.
PERSONAL CHECKS ARE NOT ACCEPTED
Total amount in US$ per desired $ **37.00**

☐ Check   ☐ Money Order
(Payable to The Endocrine Society)

Card No.# **4798264000561852**
☐ MasterCard   ☐ VISA (all sides completed)
Expiration Date: **07/95**

**DR. KEITH KAUFMAN**

Circle only one category
**Basic Science Categories**
☐ Consider for Oral Session
1. Adrenal Neuroendocrinology
2. Adrenal Gland
3. Renin-Mineralocorticoids-ANF-ADH
4. PTH-Calcitonin-Vitamin D-Bone
5. Thyroid-TRH-TSH
6. Thyroid Hormones and Receptors
7. Prolactin
8. GH-GRF-Somatostatin-Growth
9. IGFs
10. Inhibins-Activins-TGF betas
11. Growth Factors (General)
12. Insulin-Glucagon-GI Peptides-Diabetes-Obesity
13. Reproductive Neuroendocrinology
14. Reproduction-Gonadal Control-Male
15. Reproduction-Gonadal Control-Female
16. Fetal-Placental Unit
17. Steroidogenesis
18. Steroid Hormones and Receptors
19. Intracellular Signaling Systems
20. Gene Regulation and Structure
21. Protein Processing
22. Endocrine Genetics
23. Hormones and Cancer
24. Hormones and Immune System

**Clinical Science Categories**
☑ Consider for Oral Session
25. IGF and Growth Hormone
26. Bone and Calcium
27. Pituitary
28. Diabetes-Lipids and Obesity
29. Renin-Mineralocorticoids
30. Glucocorticoids
31. Female Reproduction
32. Male Reproduction
33. Thyroid

**The Effects of Oral Finasteride on Scalp Hair Growth in Men with Male Pattern Baldness.** Keith D. Kaufman, Glenn J. Gormley, Bruce Binkowitz, Carol A. Jacobsen, Karen Bruno and the Finasteride Male Pattern Baldness Study Group, Merck Research Labs, Rahway, NJ 07065. In adult men, androgens are a prerequisite for the development of male pattern baldness (MPB). In men with inherited 5α-reductase (5α-R) deficiency, MPB has not been found. We conducted a double-blind, placebo-controlled, multicenter dose range-finding study to evaluate the safety and efficacy of oral finasteride (F), a 5α-R inhibitor, in men with MPB. F was administered at doses of 1, 0.2, or 0.01 mg/day for 6 months. Serum DHT was reduced to castrate levels in patients (pts.) receiving 1 or 0.2 mg/day, while serum testosterone (T), luteinizing hormone (LH) and follicle-stimulating hormone (FSH) remained in the normal range. Pts. treated with F at 1 or 0.2 mg/day showed improvement in hair growth vs. treatment with 0.01 mg/day or placebo. Clinical improvement in hair growth/appearance was determined by (1) pts. hair growth questionnaire (HGQ); (2) investigator clinical assessment (ICA); and (3) global photographic assessment (GPA), while objective improvement was determined by macrophotographic hair counts (HC) in a 1 inch diameter circle of scalp hair.

| Change from Baseline (Δ) | Placebo (n=35) | 0.01 mg (n=95) | 0.2 mg (n=95) | 1 mg (n=95) |
|---|---|---|---|---|
| DHT (median % Δ) | - 3.9 % | - 10.8 % [*] | - 61.7 % [*] | - 66.7 % [*†] |
| T (median % Δ) | 8.8 % | 13.2 % | 23.9 % [*] | 21.5 % [*] |
| LH (mean Δ, IU/L) | - 0.91 | - 1.25 | - 0.46 | - 0.61 |
| FSH (mean Δ, IU/L) | 0.37 | - 0.03 | - 0.48 [*] | 0.10 |
| HC (mean Δ, hairs) | - 7.1 | - 3.2 | 61.4 [*] | 77.4 [*] |
| HGQ (pts. improved) | 32 % | 36 % | 48 % [*] | 54 % [*] |
| ICA (pts. improved) | 14 % | 17 % | 31 % [*] | 27 % [*] |
| GPA (pts. improved) | 20 % | 19 % | 34 % [*] | 66 % [*†] |

[*] $p < 0.05$ vs. placebo     [†] $p < 0.05$ 1 mg vs. 0.2 mg

No significant safety issues were identified in patients receiving F at any dose. Based on these data, treatment with F results in a clinically significant improvement in hair growth in men with MPB.

Final session assignments are made by the Program Committee.
Sponsoring member must sign each abstract and sponsor no more than two (2) abstracts.

**Sponsored by**
The member who sponsors this abstract certifies by signing that the rules (on the reverse) have been followed.

MEMBER SIGNATURE          DR. KEITH KAUFMAN          (908) 750-8486
                          PRINT OR TYPE MEMBER'S NAME          TELEPHONE

Exhibit 2

## Haircount

A tattoo was applied at the anterior leading edge of the vertex bald spot at baseline. This served as the center of a one inch diameter circle within which hair was clipped to 1-2 mm length. A black and white macrophotograph of this clipped area was taken and a photographic print was dot mapped by a trained technician who was blinded to patient, time of photographic session and treatment group. Dot maps were scanned and haircounts obtained by computer-assisted analysis.

Exhibit 3

# METHODS

## Investigator Assessment

Patients were evaluated by investigators in the clinic every three months and rated on clinical change from baseline during the study. A seven point rating scale of hair growth from "greatly decreased" to "greatly increased" was used.

**Exhibit 4**

## Patient Self-Assessment

Patients responded to a self-administered hair growth questionnaire at baseline and at each follow-up visit. Questions to be analyzed were selected prior to unblinding and analyzed as individual hypotheses.

## Global Photographic Assessment

Patients were placed in a stereotactic device and a color slide was taken of the vertex area. A panel of three experienced investigators, who were blinded to patient and treatment group, independently reviewed baseline and follow-up dual-projected slides. The median score for each patient was chosen, based on a seven point rating scale of hair growth from "greatly decreased" to "greatly increased".

# EXHIBIT I



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/214,905 | 03/17/94 | GORMLEY | G | 191091A |

ROSE, S      EXAMINER

CATHERINE D. FITCH          12M2/0814
PATENT DEPARTMENT
MERCK & CO., INC.
P.O. BOX 2000
RAHWAY, NJ 07065-0907

| ART UNIT | PAPER NUMBER |
|---|---|
| 1205 | #10 |

DATE MAILED: 08/14/95

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined   ☒ Responsive to communication filed on *MAY 8 1995*   ☒ This action is made final.

A shortened statutory period for response to this action is set to expire ___3___ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.        2. ☐ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.            4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.  6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☒ Claims _1 3 5 8  19 62  28 530_ are pending in the application.

   Of the above, claims _8_ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _1 3 57  19 62  28 530_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☒ Claims _8_ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
    are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
     examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received
     ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
     accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other _____

**EXAMINER'S ACTION**

PTOL-326 (Rev. 2/93)

Serial Number: 08/214,905

Art Unit: 1205

-2-

The May 8, 1995 Amendment and remarks have been considered, as well as the Keith Kaufman Declarations. Claims 1, 3, 4, 5, 6, 7, 8, 19, 20, 21, 28, 29, and 30 allegedly read on the elected species of:

A)    finasteride of claim 10;

B)    oral route of administration of claim 6;

C)    male pattern baldness alopecia of claim 5;

and D)    male sex patients. The restriction requirement is adhered to and made FINAL without prejudice to representation of the non-elected subject matter in a divisional application. Claim 8, however, is also withdrawn, Rule 142(B) as a non-elected topical method, (See page 6, line 9) parenteral is also non-elected). Oral is elected herein.

The claims can be allowed under recently distributed "utility guidelines" in view of the Keith Kaufman Declaration if, in claim 1, line 1, preceding "treating", and claim 21, preceding "arresting" there is inserted-- lowering the level of 5-a-dihydrotestosterone in human scalp, and thereby--.

Is Example 4, pages 12 to 14 "prophetic and speculative", (?) it seems to be a protocol to be followed. A Rule 132 Declaration is needed to corroborate Example 5, page 14, lines 30 to 35, that the "significant reduction in DHT content in scalp tissue" led to statistically significant useful benefit in treating androgenic alopecia as asserted. The Keith Kaufman

Serial Number: 08/214,905                                    -3-

Art Unit: 1205

Declaration may or may not involve Ex. 5 or show statistical significance, its hard to say one way or another, also, the dosages employed do not correspond to the encompassed scope of dosages claimed.

The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed. 2nd 545 (1966), 148 USPQ 459, that are applied for establishing a background for determining obviousness under 35 U.S.C. § 103 are summarized as follows:

1.  Determining the scope and contents of the prior art;
2.  Ascertaining the differences between the prior art and the claims at issue; and
3.  Resolving the level of ordinary skill in the pertinent art.

Claims 1, 3 to 7, 19 to 21, and 28 to 30 are rejected under 35 U.S.C. § 103 as clearly <u>motivated</u> by each of: Metcalf, Diani (1992), Sudduth, Rasmussen (I, II), Petrow, and Orentreich (I-II), differing <u>only</u> in the optimum dosage level to obtain the same result, with susceptible balding subjects.  No Experts' Declaration has been presented to establish the lack of motivation to reduce the dosages described by Rasmussen (I-II) and Petrow and other of the prior art; difference in an experts' expectations from Metcalf's finding in rats, that Diani is "a teaching away", or to <u>omit</u> progesterone and select a type 2 inhibition in Orentreich (I-II), a type 2 inhibition in Orentreich (I-II).  Keith Kaufman's Declaration is <u>silent</u> on each of these points.

Serial Number: 08/214,905                                    -4-

Art Unit: 1205


**THIS ACTION IS MADE FINAL.** Applicant is reminded of the

extension of time policy as set forth in 37 C.F.R. § 1.136(a).


A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS
OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION
IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED
STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE
ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.

A facsimile center has been established in Group 1200, room 3C10.
The hours of operation are Monday through Friday, 8:45 AM to 4:45
PM. The telecopier numbers for accessing the facsimile machine
is (703) 308-4556 or 305-3592.


ROSE:jd
AUGUST 4, 1995

SHEP K. ROSE
PRIMARY EXAMINER
GROUP 1200

# EXHIBIT J



Corres. and all
BOX AF     EXPEDITED PROCEDURE UNDER 37 C.F.R. § 1.116
EXAMINING GROUP 1205
PATENT

*A/F*

*# 11/13
/( at)
JRP
12/5/95*

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicants:  G. J. Gormley et al. | |
| Serial No.:  08/214,905  Case No.: 19109IA | Art Unit:<br>1205 |
| Filed:      March 17, 1994 | |
| For:        METHOD OF TREATING ANDROGENIC<br>ALOPECIA WITH 5-ALPHA REDUCTASE<br>INHIBITORS | Examiner:<br>S. Rose |

The Assistant Commissioner for Patents
Box AF
Washington, D.C.  20231

### AMENDMENT UNDER 37 C.F.R. § 1.116

Sir:

This is in response to the Final Rejection mailed August 14, 1994,
having an appeal due Tuesday, November 14, 1995.  Enclosed herewith is a
Declaration under 37 C.F.R. § 1.132 by Dr. Keith Kaufman.

<u>In the Claims</u>

Cancel Claim 8.

I hereby certify that this correspondence is being
deposited with the United States Postal Service as
first class mail in an envelope addressed to:
Assistant Commissioner for Patents, Wash-
ington, D.C. 20231, on the date appearing below.
**MERCK & CO., INC.**
by _____ Date 11/14/95

U.S.S.N.: 08/214,905
Case No.: 19109IA
Page No.: 2

## REMARKS

Reconsideration of the application, and entry of the amendment above are respectfully requested.

Claims 1, 3 to 8, 19 to 21 and 28 to 30 were pending in the present application. Claim 8 was withdrawn from consideration subject to a restriction requirement. Claims 1, 3 to 7, 19 to 21 and 28 to 30 were rejected. Claim 8 has been canceled. Currently, Claims 1, 3 to 7, 19 to 21, and 28 to 30 are under consideration.

The Examiner had required an election of a single disclosed species of (a) active agent, (b) route of administration, (c) alopecia and (d) sex of person under 35 U.S.C. § 121.

Applicants had elected the following:

(a) active agent is finasteride (17β-(N-tert.-butylcarbamoyl)-4-aza-5α-androst-1-ene-3-one) specifically claimed in Claim 10;

(b) route of administration is oral, specifically claimed in Claim 6;

(c) type of alopecia is male pattern baldness, specifically claimed in Claim 5; and

(d)    sex of patient is male; stating that this election read on Claims 1, 3, 4, 5, 6, 7, 8, 19, 20, 21, 28, 29, and 30.

The Examiner adhered to the election of species and made it final without prejudice to representation of the nonelected subject matter in a divisional application The Examiner also withdrew Claim 8 as a non-elected topical method.

The Examiner stated that the claims could be allowed under the "utility guidelines in view of the Keith Kaufman Declaration if, in Claim 1, line 1,

U.S.S.N.: 08/214,905
Case No.: 19109IA
Page No.: 3

preceeding "treating" and Claim 21, preceding "arresting"  there is inserted--lowering the level of 5α-dihydrotestosterone in human scalp and thereby--.

Applicants respectfully submit that such an amendment to the claims is not necessary. The patentability of the invention does not depend on the mechanism by which the claimed invention works. Applicants should not be required to introduce elements into the claim on which patentability does not depend. Applicants provided the information relating to the theory by which their invention may operate. However, Applicants' invention  is that low doses of the 5α-reductase 2 inhibitor, finasteride, grow hair in patients suffering from androgenic alopecia. Applicants should not be required to add terminology to a claim when such terminology does not affect the patentability of the claim.

In light of the remarks above, Applicants respectfully request reconsideration of the Claims under the utility guidelines.

The Examiner queried whether Example 4, pages 12 to 14 is "prophetic and speculative." Applicants provided Example 4 in the present application to show one of ordinary skill in the art how to use macrophotography and global photography to detect the effect of the present invention, hair growth, in patients suffering from androgenic alopecia.

The Examiner stated that a rule 132 Declaration was needed to corroborate Example 5, page 14, lines 30 to 35 that the "significant reduction in DHT content in scalp tissue" led to <u>statistically significant</u> useful benefit in treating androgenic alopecia as asserted.  Further, the Examiner stated, "The Keith Kaufman Declaration may or may not involve Example 5 or show statistical significance, its hard to say one way or another, also, the dosages employed do not correspond to the encompassed scope of the dosages claimed."

The Keith Kaufman Declaration previously presented involved a different study from the study that measured the DHT levels in the scalp (which was the basis of Example 5). The study in Example 5 was a 6-week study.  The

U.S.S.N.: 08/214,905
Case No.: 19109IA
Page No.: 4

study presented in the previous Keith Kaufman Declaration was a 6 <u>month</u> study (subsequently extended to 12 months) designed to determine the effects of low doses of finasteride in men with male pattern baldness. The 6 month study reported in the declaration was ongoing at the time of the filing of the parent application, and verified results were not available at the time of filing the present application.

The Declaration previously submitted under Dr. Kaufman's signature does show statistical significance. As can be seen in the Table in Exhibit 1 of Dr. Kaufman's previously submitted Declaration, in both the 0.2 mg and 1 mg treatment groups, the change in hair count (HC) was statistically significant ($p < 0.05$) versus placebo. Further, in each of the 0.2 mg and 1 mg treatment groups, the percent of patients who improved in the hair growth questionnaire (HGQ) was statistically significant ($p < 0.05$) versus placebo. In each of the 0.2 mg and 1 mg treatment groups, the percent of patients who improved on the investigator clinical assessment (ICA) was also statistically significant ($p < 0.05$) versus placebo. Lastly, in each of the 0.2 mg and 1 mg treatment groups the percent of patients who improved in the global photographic assessment was statistically significant ($p < 0.05$) versus placebo.

The previously submitted § 1.132 Declaration by Dr. Kaufman clearly presented data, and stated that the results presented were statistically significant when compared to placebo.

Claims 1, 3 to 7, 19 to 21, and 28 to 30 were rejected under 35 USC § 103 over Metcalf, Diani (1992), Sudduth, Rasmussen (I, II), Petrow, and Orentreich (I-II). The Examiner stated:

[These claims are] clearly <u>motivated</u> by each of: Metcalf, Diani (1992), Sudduth, Rasmussen (I, II), Petrow, and Orentreich (I-II), differing <u>only</u> in the optimum dosage level to obtain the same result, with susceptible balding subjects. No Experts' Declaration has been presented to establish the lack of motivation to reduce the dosages

U.S.S.N.: 08/214,905
Case No.: 19109IA
Page No.: 5

described by Rasmussen (I-II) and Petrow and other of the prior art;
difference in an expert's expectations from Metcalf's finding in rats,
that Diani is a "teaching away" or to omit progesterone and select a
type 2 inhibition in Orentreich (I-II).  .  Keith Kaufman's Declaration
is silent on each of these points.

Applicants have submitted herewith a second § 1.132 Declaration by
Dr. Keith Kaufman.  In this Declaration, Dr. Kaufman explains the surprising and
unexpected result that a 1 mg dose of finasteride is as clinically efficacious as a 5
mg dose for the treatment of androgenic alopecia, particularly male pattern
baldness.  This is a particularly surprising result because prior to the present
invention, it was known that finasteride was a much more potent inhibitor of the
type 2 enzyme than of the type 1 enzyme.  The type 2 enzyme was known to
predominate in the prostate and the type 1 enzyme was known to predominate in
sebaceous glands of skin tissue, including scalp tissue.  Further, prior to the present
invention, it was known and reported that finasteride at a 5 mg dose produced
greater clinical efficacy than 1 mg finasteride in the treatment of benign prostatic
hyperplasia (BPH).  Thus, if a 1 mg dose was suboptimal for the treatment of BPH,
which involved inhibiting the formation of DHT in prostatic tissue, one would have
expected that a much larger dose of finasteride would be needed to treat male
pattern baldness, which involved sebaceous tissue.  Finasteride was known to be a
less potent inhibitor of the type 1 enzyme (about 100x worse for type 1 than type 2,
based on apparent potency-- the concentration requried to produce 50% inhibition).
Nevertheless, it was surprisingly found that finasteride was as clinically efficacious
at 1 mg as it was at 5 mg in the treatment of male pattern baldness.

In light of the 1.132 Declaration by Dr. Kaufman submitted herewith,
the remarks above and the remarks in the previous response, Applicants
respectfully request reconsideration and withdrawal of the rejection of Claims 1, 3
to 7, 19 to 21, and 28 to 30 35 USC § 103 over  Metcalf, Diani (1992), Sudduth,
Rasmussen (I, II), Petrow, and Orentreich (I-II).

U.S.S.N.: 08/214,905
Case No.: 19109IA
Page No.: 6

Applicants respectfully submit that the amendment place the application in condition for allowance or at least in better condition for appeal, and respectfully request entry of the amendments, consideration of the Declaration under 37 C.F.R. § 1.132, and the remarks above. A favorable action by the Examiner is earnestly solicited.

The Examiner is invited to contact Applicants' attorney at the number below, if such would facilitate the prosecution of this application.

Respectfully submitted,

By Catherine D. Fitch
Catherine D. Fitch
Reg. No. 36,502
Attorney for Applicants

Merck & Co., Inc.
P.O. Box 2000
Rahway, NJ 07065-0907
(908) 594-4283

Enclosure
Date: November 13, 1995

EXHIBIT K

#11

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicants: | G. J. Gormley et al. |
| Serial No.: | 08/214,905    Case No.: 19109IA |
| Filed: | March 17, 1994 |
| For: | METHOD OF TREATING ANDROGENIC ALOPECIA WITH 5-ALPHA REDUCTASE INHIBITORS |

Art Unit: 1209

Examiner: S. Rose

The Assistant Commissioner for Patents
Washington, D.C. 20231

## DECLARATION UNDER 37 C.F.R. § 1.132

Sir:

    I, Keith D. Kaufman, hereby declare that:

    1.    I am currently Director of Clinical Research Endocrinology and Metabolism at Merck & Co., Inc., and have been since January 1994. From October 1991 until the start of my current position, I was Associate Director of Clinical Research Endocrinology and Metabolism at Merck. In such capacity, my primary responsibility is the direction of human clinical trials of Merck drug compounds. One such compound is $17\beta$-(N-tert-butylcarbamoyl)-4-aza-$5\alpha$-androst-1-en-3-one, which is known generically as finasteride.

Serial No.:   08/214,905
Case No.:    19109IA
Page No.:    2

2.     My relevant educational background is as follows:

- B.A. (1972) and pre-medicine studies (1977-1979) from Columbia University;
- M.D. (1983) from the University of California, San Francisco School of Medicine .

3.     My academic experience is as follows:

- Internship followed by residency in the area of internal medicine at Johns Hopkins Hospital in Baltimore, MD;
- Fellow, Endocrinology and Metabolism at the University of California, San Francisco Hospitals;
- Associate Investigator, Veterans Administration Medical Center, San Francisco, CA;
- Instructor of Medicine in Residence, University of California, San Francisco School of Medicine.

4.     I have received the following certifications:

Endocrinology and Metabolism (ABIM) (1989); American Board of Internal Medicine (1986); Diplomate, National Board of Medical Examiners; and I received a California Medical License in 1984.  I am an elected member of Alpha Omega Alpha since 1983, and a member of the Endocrine Society since 1991.

5.     I have 10 technical publications in the fields of molecular biology and endocrinology; representative publications are as follows:

(i) Kaufman, K.D., Rapoport, B., Seto, P., Chazenbalk, G.D., Magnusson, R.P., "Generation of recombinant, enzymatically-active human thyroid peroxidase and its recognition by antibodies in the sera of patients with Hashimoto's thyroiditis," *J. Clin. Invest.*, 85, 617-621 (1989).

(ii) Foti, D., Kaufman, K.D., Chazenbalk, G.D., Rapoport, B., "Generation of a biologically-active, secreted form of human thyroid peroxidase by site-directed mutagenesis," *Mol. Endocrinol.*, 4, 786-791 (1990).

(iii) Rapoport, B., Kaufman, K.D., Chazenbalk, G.D., "Cloning of a member of the arrestin family from a human thyroid cDNA library," *Mol Cell Endocrinol.*, 84, R39-43, (1992).

Serial No.:    08/214,905
Case No.:    19109IA
Page No.:    3

I have written three book chapters, including the following: Kaufman, K.D., Fitzgerald, P.A., "Endocrine Disorders," Handbook of Medical Treatment, 18th Ed., Jones Medical Publications, Greenbrae, CA (1988). I have also been an invited lecturer for : "New Frontiers with Finasteride," Symposium on Innovative Approaches to Prostate Cancer, Albert Einstein Medical Center, Philadelphia, PA (Nov. 1992); and "Biology of 5α-Reductase Inhibitors," Yale University School of Medicine, New Haven, CT (Dec. 1994).

   6.    Exhibit A is a graph showing the Net Hair Count Change from Baseline for 5 mg and 1 mg finasteride. The data for the 5 mg line were obtained as follows:

   In a pilot, one-year clinical study evaluating the effect of finasteride 5 mg/day vs. placebo in men with male pattern baldness, hair counts were obtained from a one inch diameter circle of clipped scalp hair centered at the leading edge of the vertex bald area. Data were obtained at baseline, Month 6 and Month 12 from macrophotographs of the clipped area, which were dot mapped and scanned, using computer-assisted image analysis. Hair count is expressed as change from baseline, and net hair count change from baseline is determined by subtraction of the control group change from baseline from that of the finasteride-treated group.

The data for the 1 mg line were obtained as follows:

   The identical procedure was followed for a separate 6 month, dose range-finding clinical study evaluating the effect of finasteride 1 mg, 0.2 mg, and 0.01 mg/day vs. placebo. This study was extended for another 6 months (to Month 12) without placebo, but blinded to dose. The 0.01 mg dose was subtherapeutic and similar in efficacy to placebo at Month 6 and, therefore, the 0.01 mg treatment group served as the control group for the two active-treatment (1 mg and 0.2 mg) groups through Month 12.

   7.    As can be seen from Exhibit A, the 1 mg/day and 5 mg/day doses of finasteride appear to be equally effective in the treatment of male pattern baldness.

Serial No.:    08/214,905
Case No.:     19109IA
Page No.:     4

8.    In October 1993, it was known that 5α-reductase existed in two isomeric forms, type 1 and type 2. The human type 1 isozyme was known to predominate in sebaceous glands of skin tissue, including scalp tissue. The human type 2 isozyme was known to predominate in the prostate. The apparent potency for finasteride (17β-(N-tert-butylcarbamoyl)-4-aza-5α-androst-1-en-3-one) in a fixed time assay, was known to be 4.2 nM for the type 2 isoenzyme, the predominant form in prostate tissue. The apparent potency for finasteride, under analogous conditions, for the type 1 isoenzyme was known to be 500 nM. Apparent potency is the concentration required to produce 50% inhibition.

9.    Prior to October 1993, it was known that 5 mg finasteride produced greater clinical efficacy than 1 mg finasteride in the treatment of benign prostatic hyperplasia, and therefore, a 1 mg dose of finasteride was suboptimal for the treatment of benign prostatic hyperplasia.

10.    In my opinion, given that finasteride was more than one hundred times less potent in the scalp tissue than it was in prostate tissue, and that there were clinically significant differences in the effectiveness of the 1 mg and 5 mg dose of finasteride for the treatment of benign prostatic hyperplasia, one of ordinary skill in the art would have expected that for the optimal treatment of androgenetic alopecia, including male pattern baldness, a dose of finasteride of at least the therapeutically effective dose used for benign prostatic hyperplasia (5 mg/day) would have been required.

11.    Thus, in my opinion, one of ordinary skill in the art would have found it surprising and unexpected that doses lower than 5 mg, particularly the 1 mg dose of finasteride, appear equally effective to 5 mg in the treatment of male pattern baldness.

12.    I hereby declare further that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or

Serial No.:  08/214,905
Case No.:   19109IA
Page No.:   5

imprisonment, or both, under Section 1001 of Title 18 of the United States Code
and that such willful false statements may jeopardize the validity of the application
or any patent issuing thereon.

Signature:                                    Date:

Keith D. Kaufman                              11-13-95





EXHIBIT A

Net Hair Count Change From Baseline
(Difference from Control)

EXHIBIT L



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/214,905 | 03/17/94 | GORMLEY | G    19109?A |

ROSE.S

12M2/1207

| EXAMINER |
|---|

CATHERINE D. FITCH
PATENT DEPARTMENT
MERCK & CO., INC.
P.O. BOX 2000
RAHWAY, NJ  07065-0907

| ART UNIT | PAPER NUMBER |
|---|---|
| 1205 | #12 |

DATE MAILED: 12/07/95

*Below is a communication from the EXAMINER in charge of this application.*

**COMMISSIONER OF PATENTS AND TRADEMARKS**

### ADVISORY ACTION

☒ THE PERIOD FOR RESPONSE:

a) ☒ is extended to run _____ or continues to run  *3 mos*  from the date of the final rejection.

b) ☐ expires three months from the final rejection or as of the mailing date of this Advisory Action, whichever is later. In no event however, will the statutory period for the response expire later than six months from the date of the final rejection.

Any extension of time must be obtained by filing a petition under 37 CFR 1.136(a), the proposed response and the appropriate fee. The date on which the response, the petition, and the fee have been filed is the date of the response and also the date for the purposes of determining the period of extension and the corresponding amount of the fee. Any extension fee pursuant to 37 CFR 1.17 will be calculated from the date of the originally set shortened statutory period for response or as set forth in b) above.

☐ Appellant's Brief is due in accordance with 37 CFR 1.192(a).

☒ Applicant's response to the final rejection, filed  *11/17/95*  has been considered with the following effect, but it is not deemed to place the application in condition for allowance.

1. ☒ The proposed amendments to the claim and / or specification will not be entered and the final rejection stands because:

 a. ☐ There is no convincing showing under 37 CFR 1.116(b) why the proposed amendment is necessary and was not earlier presented.

 b. ☐ They raise new issues that would require further consideration and/or search. (See Note).

 c. ☐ They raise the issue of new matter. (See Note).

 d. ☐ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal.

 e. ☐ They present additional claims without canceling a corresponding number of finally rejected claims.  *statistically significant*

 NOTE: *In view of Dr. Keith Kaufman's new Rule 132 Declaration, claims to the elected species could be found patentable if claims 1 and 21 were amended to recite -- male pattern baldness -- orally -- bald or balding scalp person -- and, at the claim end -- at least until growth of hair on the detected in the bald spot or bald area by haircount analysis of said bald spot or area -- as stated*

2. ☐ Newly proposed or amended claims _____ would be allowed if submitted in a separately filed amendment canceling the non-allowable claims.

3. ☒ Upon the filing an appeal, the proposed amendment ☒ will be entered ☐ will not be entered and the status of the claims will be as follows:

 Claims allowed: *26 if amended as suggested above ↑*

 Claims objected to: _____

 Claims rejected: *1 & 7  19 & 21  28 & 30*

 However:

 ☐ Applicant's response has overcome the following rejection(s): _____

4. ☒ The affidavit, exhibit or request for reconsideration has been considered but does not overcome the rejection because *claims 1 & 7 19 & 21 and 28 & 30 do not correspond in scope to the elected species and to the statistical significant hair growth findings of the Kaufman Rule 132 Declaration.*

5. ☐ The affidavit or exhibit will not be considered because applicant has not shown good and sufficient reasons why it was not earlier presented.

☐ The proposed drawing correction ☐ has ☐ has not been approved by the examiner.

☐ Other

*Shep Rose*

SHEP K. ROSE
PRIMARY EXAMINER
GROUP 1200

EXHIBIT M

P.010

EXPEDITED PROCEDURE UNDER 37 C.F.R. §.1.116
EXAMINING GROUP 1205
PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicants:  G. J. Gormley et al. | |
| Serial No.:  08/214,905  Case No.:  19109IA | Art Unit: 1205 |
| Filed:      March 17, 1994 | |
| For:        METHOD OF TREATING ANDROGENIC ALOPECIA WITH 5-ALPHA REDUCTASE INHIBITORS | Examiner: S. Rose |

The Assistant Commissioner for Patents
Box AF
Washington, D.C.  20231

DOCKETED
DEC 2 2 1995
BARBARA REILLY

AMENDMENT UNDER 37 C.F.R. § 1.116

Sir:

        This is in response to the Final Rejection mailed August 14, 1995, having a Notice of Appeal due Tuesday, November 14, 1995, the telephonic interview of December 6, 1995, and the Advisory Action of December 7, 1995. Enclosed herewith is a Petition for a Two-Month Extension of Time together with the associated fee, extending the date for filing a Notice of Appeal to Monday, January 15, 1996 (January 14, 1996 being a Sunday).

In the Claims

        Cancel Claims 6, 7 and 8.

        Amend Claim 1 as shown below:

U.S.S.N.: 08/214,905
Case No.: 19109IA
Page No.: 2

1.    (Twice Amended)  A method of treating [androgenic alopecia] male pattern baldness comprising orally administering to a [person in need of such treatment] male person having a balding area 17β-(N-tert-butylcarbamoyl)-4-aza-5α- androst-1-ene-3-one in a dosage amount from 0.05 to 3.0 mgs/day at least until growth of hair can be detected in the balding area by haircount analysis of the balding area.

Amend Claim 19 as shown below:

19.    (Twice Amended)  The method of Claim [7] 1 wherein the dosage amount is about 0.2 mg/day.

(Amend Claim 20 as shown below:)

20.    (Twice Amended)  The method of Claim [7] 1 wherein the dosage amount is about 0.05 mg/day.

(Amend Claim 21 as shown below:)

21.    (Twice Amended)  A method of arresting and reversing [androgenic alopecia] male pattern baldness comprising orally administering to a [person in need of such treatment] bald or balding male person having a balding area 17β-(N-tert-butylcarbamoyl)-4-aza-5α- androst-1-ene-3-one in a dosage amount from 0.05 to 3.0 mgs/day at least until growth of hair can be detected in the balding or area by haircount analysis of the balding area.

## REMARKS

Reconsideration of the application, and entry of the amendment above are respectfully requested.

Claims 1, 3 to 8, 19 to 21 and 28 to 30 were pending in the present application.  Claim 8 was withdrawn from consideration subject to a restriction requirement.  Claims 1, 3 to 7, 19 to 21 and 28 to 30 were rejected.  Claims 6, 7,

JAN-11-1996  12:13                                                              P.012

U.S.S.N.: 08/214,905
Case No.: 19109IA
Page No.: 3

and 8 have been canceled.  Currently, Claims 1, 3 to 5, 19 to 21, and 28 to 30 are under consideration.

The Examiner had required an election of a single disclosed species of (a) active agent, (b) route of administration, (c) alopecia and (d) sex of person under 35 U.S.C. § 121.

Applicants had elected the following:

(a) active agent is finasteride (17β-(N-tert.-butylcarbamoyl)-4-aza-5α-androst-1-ene-3-one) specifically claimed in Claim 11;

(b) route of administration is oral, specifically claimed in Claim 7;

(c) type of alopecia is male pattern baldness, specifically claimed in Claim 6; and

(d)    sex of patient is male.

The present amendment places the claims in conformance with the elected species and the statistically significant hair growth findings of the Kauffman declaration submitted with the November 14, 1995 response (not entered.)

Claims 1 and 21 have been amended to refer to the type of androgenic alopecia elected for examination, male pattern baldness, as specifically claimed in originally filed Claim 6.  These claims have been amended to refer to the oral route of administration, as specifically claimed in originally filed Claim 7, and in the specification at page 5, line 15.  They have further been amended to specify the subject to be treated, a bald or balding male person having a balding area.  Support for this amendment is found on page 14, line 32, and on page 12, line 33 and page 13, line 3.  The claims have further been amended to specify that the method be employed at least until the growth of hair can be detected in the balding area by

U.S.S.N.: 08/214,905
Case No.: 19109IA
Page No.: 4

haircount analysis of the balding area.  Support for this amendment is found in the specification in Example 4, on pages 12 to 14.

Claims 6 and 7 have been canceled because the limitations of these claims have been incorporated into Claim 1.

Claim 8 has been canceled in response to the election of species, as being drawn to the non-elected topical method of treatment.

Claims 19 and 20 have been amended to depend from Claim 1, in place of canceled Claim 7.  Amended Claim 1 incorporates the limitations of canceled Claim 7.

The Examiner is invited to contact Applicants' attorney at the number below, if such would facilitate the prosecution of this application.

Respectfully submitted,

By Catherine D. Fitch
Catherine D. Fitch
Reg. No. 36,502
Attorney for Applicants

Merck & Co., Inc.
P.O. Box 2000
Rahway, NJ 07065-0907
(908) 594-4283

Date: December 22, 1995

EXHIBIT N

2-22-96

**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/214,905 | 03/17/94 | GORMLEY | G | 19109IA |

| EXAMINER |
|---|
| ROSE,S |

12M1/0222

CATHERINE D. FITCH
PATENT DEPARTMENT
MERCK & CO., INC.
P.O. BOX 2000
RAHWAY, NJ 07065-0907

| ART UNIT | PAPER NUMBER |
|---|---|
| 1205 | 15 |

DATE MAILED:
02/22/96

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☒ This communication is responsive to _Jan 11 1996 amendment_

2. ☐ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.

3. ☒ The allowed claims are _1 3 c 5 19 21 28530_

4. ☐ The drawings filed on _____ are acceptable.

5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [_] been received. [_] not been received. [_] been filed in parent application Serial No. _____ filed on _____

6. ☐ Note the attached Examiner's Amendment.

7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.

8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☒ Note the attached NOTICE OF REFERENCES CITED, PTO-892.

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☐ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.

   a. ☐ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. _____ CORRECTION IS REQUIRED.

   b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.

   c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.

   d. ☐ Formal drawings are now REQUIRED.

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

Attachments:
-- Examiner's Amendment
-- Examiner Interview Summary Record, PTOL-413
-- Reasons for Allowance
_X_ Notice of References Cited, PTO-892
-- Information Disclosure Citation, PTO-1449

-- Notice of Informal Application, PTO-152
-- Notice re Patent Drawings, PTO-948
-- Listing of Bonded Draftsmen
-- Other

_Shep Rose_

SHEP K. ROSE
PRIMARY EXAMINER
GROUP 1200

PTOL-37 (REV. 4-89) ☀

USCOMM-DC 89-3760