# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MERCK & CO., INC., | ) |
| | ) |
| Plaintiff and | ) |
| Counterclaim Defendant, | ) |
| | ) |
| v. | ) |
| | ) C. A. No. 04-1313 (GMS) |
| DR. REDDY'S LABORATORIES, LTD. and | ) |
| DR. REDDY'S LABORATORIES, INC., | ) |
| | ) |
| Defendants and | ) |
| Counterclaim Plaintiffs. | ) |

## DRL'S ANSWERING CLAIM CONSTRUCTION BRIEF

                Richard L. Horwitz
                David E. Moore
                POTTER ANDERSON & CORROON LLP
                Hercules Plaza, 6th Floor
                1313 N. Market Street
                Wilmington, DE 19899-0951
                (302) 984-6000
                rhorwitz@potteranderson.com
                dmoore@potteranderson.com

OF COUNSEL:

Bruce D. Radin
Stuart D. Sender
BUDD LARNER, P.C.
150 John F. Kennedy Parkway
CN 1000
Short Hills, NJ 07078-0999
(973) 379-4800

Dated: August 22, 2005

                *Attorneys for Defendants/Counterclaim*
                *Plaintiffs*

# TABLE OF CONTENTS

Page

I. ARGUMENT ................................................................................................................. 1

A. Merck Narrowed The Scope Of The
   Claims By Adding The Haircount Limitation ......................................................... 1

B. Merck's Proposed Claim Construction
   Includes Subjective Methods For Measuring Hair
   Growth That Are Excluded By The Haircount Limitation ..................................... 5

   1. Counting is an Objective Measure ................................................................... 5

   2. The '957 Patent Specification And
      Prosecution History Teach That
      Subjective Methods Are Notoriously Unreliable ............................................. 6

C. Merck's Proposed Claim Construction
   Renders The '957 Patent Invalid As Indefinite ....................................................... 8

D. Merck's Distinction Between "Can Be" And
   "Must Be" Is Completely Spurious ....................................................................... 11

II. CONCLUSION ........................................................................................................... 12

## TABLE OF AUTHORITIES

Page

**Cases**

Datamize, LLC v. Plumtree Software, Inc., No. 04-1564,
    2005 WL 1845106 (Fed. Cir. Aug. 5, 2005) ..............................................................8, 9

Ecolab, Inc. v. Envirochem, Inc., 264 F.3d 1358
    (Fed. Cir. 2001).........................................................................................................3

Morton Int'l, Inc. v. Cardinal Chem. Co., 5 F.3d 1464
    (Fed. Cir. 1993).........................................................................................................8

Oak Technology, Inc. v. U.S. Int'l Trade Comm'n, 248
    F.3d 1316 (Fed. Cir. 2001) .......................................................................................4

Phillips v. AWH Corp., No. 03-1269, -1286,
    2005 WL 1620331 (Fed. Cir. July 12, 2005).............................................................2, 10

Seachange Int'l, Inc. v. C-Cor Inc., 413 F.3d 1361
    (Fed. Cir. 2005).........................................................................................................3

Smith v. Magic City Kennel Club, Inc., 282 U.S. 784
    (1931).........................................................................................................................3

TorPharm Inc. v. Ranbaxy Pharm. Inc., 336 F.3d 1322 (Fed. Cir. 2003) ...........................2

Unique Concepts, Inc. v. Brown, 939 F.2d 1558
    (Fed. Cir. 1991).........................................................................................................4

DRL hereby submits its answering claim construction brief and the accompanying Declaration of Dr. Christopher Fisher.

I. **ARGUMENT**

Merck was forced to add the claim term "at least until growth of hair can be detected in the balding area by haircount analysis of the balding area" to overcome the patent examiner's rejection of its patent claims for obviousness and to obtain allowance of the '957 patent. "Haircount" has a plain meaning – counting individual hairs to evaluate hair growth. It is an objective method. Yet, Merck would like nothing more than to ignore the plain meaning of "haircount" and has proposed a claim construction that allows the use of subjective methods for measuring hair growth – involving no hair counting at all – effectively reading the haircount limitation out of the claims entirely.

The intrinsic record, as viewed from the perspective of one of ordinary skill in the art, makes clear that subjective methods of evaluating hair growth are unsuitable for measuring actual hair growth and that the '957 patent claims require the use of an objective technique to detect hair growth. DRL's proposed claim construction – at least until hair growth can be detected by an objective haircount analysis utilizing photography to detect hair growth – is fully consistent with and supported by the intrinsic record, while Merck's proposed claim construction contradicts the intrinsic record.

A. **Merck Narrowed The Scope Of The Claims By Adding The Haircount Limitation**

During the '957 patent prosecution, the patent examiner rejected the pending claims under 35 U.S.C. § 103 on grounds of obviousness, and requested proof that low

dose finasteride actually grew hair. (Exh. 6).[1] To overcome the examiner's rejection, Merck submitted the Declaration of Keith Kaufman dated November 13, 1995 ("the second Kaufman declaration"), which contained data purportedly demonstrating the unexpected result that a 1 mg dose of finasteride is effective in treating androgenic alopecia. (Exh. 8 at ¶ 6). The data presented in that declaration were obtained using solely the objective macrophotographic hair count procedure – subjective methods used in the first Kaufman declaration were not relied upon. (Exh. 7 at 5; Exh. 8 at ¶ 6).

In light of the second Kaufman declaration, the Examiner agreed to allow the pending claims, but only if Merck amended the claims to add the claim term requiring "haircount analysis". (Exh. 10). In order to obtain the '957 patent, Merck amended the claims to add the haircount analysis limitation. (Exh. 11).

Patentees commonly limit the scope of their patent claims to overcome examiner rejections and to obtain patents. The prosecution history of the patent shows "whether the inventor limited the invention in the course of prosecution, making the claim narrower than it would otherwise be." Phillips v. AWH Corp., No. 03-1269, -1286, slip op. at 17-18, 2005 WL 1620331 (Fed. Cir. July 12, 2005) (Exh. 12); see also TorPharm Inc. v. Ranbaxy Pharm. Inc., 336 F.3d 1322, 1330 (Fed. Cir. 2003) (patentee disclaims subject matter outside the examiner's narrow view where a patentee acquiesces in a patent examiner's narrow view).

During claim construction, claim terms must be construed "so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." Ecolab, Inc. v. Envirochem, Inc., 264 F.3d 1358, 1368–69

---

[1] All citations to "Exh. __", except for Exhibit A to this memorandum, refer to the exhibits attached to DRL's Opening Claim Construction Brief.

2

(Fed. Cir. 2001) (extensive citations omitted).  This doctrine serves the purpose of putting others, including competitors such as DRL, on notice of an open and notorious surrender of subject matter from the scope of the claims:

> The prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and <u>competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct</u> such as designing around the claimed invention.

<u>Seachange Int'l, Inc. v. C-Cor Inc.</u>, 413 F.3d 1361, 1372–73 (Fed. Cir. 2005) (citations omitted) (emphasis added).

Had Merck wished to avoid narrowing its claims, it was free to challenge the Examiner's rejection and ask the Board of Patent Appeals to allow the claims without the "haircount analysis" limitation.  Because Merck did not do so, the claims of the '957 patent contain this limitation, and the patentability of the '957 patent was judged with this limitation included.  Having narrowed its claims, secured allowance of its patent, and put the public on notice that methods of growing hair with finasteride that do not produce "growth of hair [that] can be detected in the balding area by haircount analysis of the balding area" do not infringe, Merck cannot be heard to argue that it should not be held to the construction of this limitation that is objectively compelled by the prosecution history.  See <u>Smith v. Magic City Kennel Club, Inc.</u>, 282 U.S. 784, 790 (1931) (ruling that limitations imposed by the inventor following persistent rejections by the PTO must be construed against the inventor and looked upon as disclaimers).

In construing claims, a court must not broaden or narrow claims to give the patentee something different from what was allowed by the patent examiner.  A claim construction is improper if it eliminates or ignores a claim limitation and expands a patent

3

to cover subject matter disclosed but not claimed. See Oak Technology, Inc. v. U.S. Int'l Trade Comm'n, 248 F.3d 1316, 1329 (Fed. Cir. 2001); see also Unique Concepts, Inc. v. Brown, 939 F.2d 1558, 1562 (Fed. Cir. 1991). Merck's proposed claim construction runs afoul of this rule because it would eliminate the haircount limitation that Merck was forced to add in order to obtain the '957 patent.

      Merck's attempt to reclaim the very subject matter surrendered during prosecution – methods of growing hair that cannot be detected by haircount analysis – is completely unavailing. To support its litigation position, Merck submitted an opinion from an expert witness, Dr. David Whiting, asserting that the patent prosecution history supports its argument that the '957 patent claims include the use of subjective methods for measuring hair growth. (Whiting Decl. ¶ 17). The Federal Circuit has emphasized that "extrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and this can suffer from bias that is not present in intrinsic evidence." Phillips, slip op. at 20. Dr. Whiting's report suffers from just this infirmity. He never addresses the significance of the second Kaufman declaration (in which only the objective macrophotographic procedure was used and that Merck relied on to obtain allowance of the claims), the Examiner's requirement that the disputed term be added to the claims before allowance would be granted, or Merck's decision to comply with the Examiner's requirement and limit its claims. Dr. Whiting's conclusion is contradicted by the '957 patent prosecution history, which shows that the Examiner required the addition of a claim term for "haircount analysis" based on the objective method specified in the second Kaufman declaration.

The Federal Circuit in <u>Phillips</u> instructed that:

> conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court. Similarly, a court should discount any expert testimony "that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent."

<u>Slip op.</u> at 19. Accordingly, this Court should accord no weight to Dr. Whiting's testimony and should reject any argument that the construction of "haircount analysis" includes subjective methods of measuring hair growth.

### B. Merck's Proposed Claim Construction Includes Subjective Methods For Measuring Hair Growth That Are Excluded By The Haircount Limitation

Merck's proposed claim construction permits the use of subjective methods, such as global photography, investigator assessment and patient self-assessment, that rely entirely on the subjective impressions of either the investigator or patient to determine whether "growth of hair can be detected in the balding area". None of these methods employ a haircount. Contrary to Merck's argument, these subjective methods do not stand on an equal footing with the objective macrophotographic procedure detailed in Example 4 of the '957 patent. Subjective methods are inadequate to determine whether hair growth has actually occurred, and Merck's proposal leads to a claim construction that is contrary to the intrinsic evidence and is indefinite.

#### 1. *Counting is an Objective Measure*

"Count" is defined as "to indicate, name or separate (units out of a body of units) one by one or group by group to find the total number of units involved or concerned." (Fisher Decl. ¶ 18). The plain meaning of "haircount" therefore is the naming or listing

5

of individual hairs <u>one by one</u> in order to determine the total amount of hair. (Fisher Decl. ¶ 18). The act of counting individual hairs to arrive at a total number necessarily implies that the total or end result of "haircount analysis" must be a quantitative measurement, not a qualitative description. (Fisher Decl. ¶ 19). "Haircount analysis" is thus an objective technique to the extent that it eliminates the role of the subjective impressions of the investigator or patient. (Fisher Decl. ¶ 19).

> 2. *The '957 Patent Specification And Prosecution History Teach That <u>Subjective Methods Are Notoriously Unreliable</u>*

The '957 patent specification and the patent prosecution history provide a comprehensive basis for comparing the objective macrophotographic procedure set forth in Example 4 of the '957 patent with subjective methods such as global photography, investigator assessment and patient assessment. Olsen, E.A. and DeLong, E., *J. American Academy of Dermatology*, Vol. 23, p. 470 (1990) ("the Olsen paper"), which is referenced in Example 4 of the patent specification, employed each of the macrophotographic procedure, patient assessment and investigator assessment methods but specifically states that "[e]fficacy was determined by counting the nonvellus hairs" using "macrophotographs". (Exh. 2 at 470). The Olsen paper further states that the "improvements in hair growth methodology" consisted of performing "[h]air <u>counts</u> … from photographs, which allowed a permanent record and the comparison of two different <u>counters</u> … [and] should help to standardize future studies of hair growth-promoters in androgenic alopecia." (Exh. 2 at 472) (emphasis added). In other words, the Olsen paper demonstrates that only the objective haircount analysis can be relied on to determine actual hair growth.

In Olsen, using subjective methods, the investigators perceived hair growth for 10% of the patients, while 44% of patients believed that they experienced light to moderate hair growth. (Exh. 2 at 472). But in reality, the agents being tested did not grow hair. The macrophotographic procedure consistently showed <u>decreases</u> in hair count. (Exh. 2 at 472).

The inherent bias of the subjective methods towards perceiving hair growth is also demonstrated in the results presented in the first Kaufman Declaration, dated May 3, 1995. (Exh. 5). (Fisher Decl. ¶ 16). In subjects receiving 0.01 mg finasteride, global photography showed perceived hair growth in 17% of the subjects, investigator assessment showed perceived hair growth in 19% of the subjects, and patient assessment showed perceived hair growth in 36% of the subjects. (First Kaufman Decl. at Exh. 1). In reality, there was no hair growth. The objective macrophotographic procedure showed <u>decreases</u> in haircount for the groups receiving both 0.01 mg finasteride and placebo. (First Kaufman Decl. at Exh. 1). Even for the placebo group, which lost hair when counted, global photography showed perceived hair growth in 14% of the subjects, investigator assessment showed perceived hair growth in 20% of the subjects, and patient assessment showed perceived hair growth in 32% of the subjects. (First Kaufman Decl. at Exh. 1).

These "false positive" readings from the subjective methods in the face of actual decreasing hair counts, as evidenced by the objective macrophotographic haircount procedure, establish that the subjective methods provide no reliable, repeatable way to determine whether hair growth has in fact occurred. (Fisher Decl. ¶ 16). Indeed, they risk rendering the claim inoperable since there may be no actual hair growth as measured

7

by objective means.

### C. Merck's Proposed Claim Construction Renders The '957 Patent Invalid As Indefinite

The patent laws require claims to be "sufficiently precise to permit a potential competitor to determine whether or not he is infringing." Morton Int'l, Inc. v. Cardinal Chem. Co., 5 F.3d 1464, 1470 (Fed. Cir. 1993). The Federal Circuit more recently explained that the purpose of the definiteness requirement is "to insure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." Datamize, LLC v. Plumtree Software, Inc., No. 04-1564, slip op. at 7, 2005 WL 1845106 (Fed. Cir. Aug. 5, 2005) (Exhibit A hereto). To satisfy the definiteness requirement, an "objective standard must be provided in order to allow the public to determine the scope of the claimed invention." Slip op. at 13. Without an objective measure – a haircount, the claim is indefinite.

In Datamize, the Federal Circuit affirmed a grant of summary judgment holding the patent in suit invalid as indefinite. Slip op. at 1. In its analysis of the intrinsic record, the Federal Circuit rejected the patentee's argument that the proper construction of the term "aesthetically pleasing", as applied to the look and feel of custom interface screens on kiosks, depended solely on the subjective opinion of a user customizing the screen – i.e., the user simply must have intended to create an "aesthetically pleasing" interface screen, and it would be irrelevant whether the user actually succeeded. Slip op. at 10-11. The court concluded that the plain meaning of the claim language required that the aggregate layout of elements on a custom screen actually be "aesthetically pleasing", regardless of what the user intended – a subjective standard. Slip op. at 10-12. The claims were indefinite because they did not provide one of ordinary skill in the art with

any way to determine when an interface screen was "aesthetically pleasing", and did not allow the public to determine the scope of the claimed invention. Slip op. at 13.

Merck's proposed construction of the claim term "haircount analysis" to include subjective methods makes the '957 patent claims indefinite for the same reason the subjective term "aesthetically pleasing" was indefinite in Datamize. Counting hairs at the baseline, and then repeating the count after a period of treatment is an objective method of determining whether the treatment is effective. It eliminates the subjective elements of patient or investigator judgments, which are known to be unreliable. By counting hairs in a photograph, one knows for sure if the treatment is working.

In contrast, the subjective methods included in Merck's proposed claim construction do not provide a real indication of whether the treatment is effective, much less a precise count of the number of hairs. (Fisher Decl. ¶¶ 13, 16, 21). Instead, these methods rely entirely on the subjective impressions of the patient or investigator to determine whether "growth of hair can be detected in the balding area" and therefore yield only a qualitative, indirect assessment of the overall appearance of the patient. (Fisher Decl. ¶ 12). In the case of a baldness treatment, the inherent inaccuracy of a global visual method of assessment is compounded by the fact that the impressions of a patient or investigator are likely to be swayed by a predisposition towards perceiving hair growth, as evidenced in the Olsen article and the Kaufman declaration relied on in the specification and the prosecution history and discussed supra. (Fisher Decl. ¶ 16). Moreover, patient self-assessment and investigator assessment typically occur when a physician or dermatologist prescribes finasteride outside the setting of a clinical study. (Fisher Decl. ¶ 12). Under those circumstances, photographic records of the balding area

during treatment are rarely created, and no baseline is established for subsequent comparisons to measure the progress of the treatment. (Fisher Decl. ¶ 12).[2]

In <u>Datamize</u>, the patentee's proposed claim construction was rejected on the grounds that it depended solely on the subjective intent of the user, without regard to whether or not an "aesthetically pleasing" interface was actually achieved. <u>Slip op.</u> at 11-12. Merck's proposed claim construction fails because it allows the subjective impressions of patient or investigator to serve as the complete measure of whether hair growth has occurred. Under Merck's proposal, as long as either the patient or investigator perceives more hair, with no accounting for the biases of the person making the global visual assessment, then the claim term is satisfied whether or not hair growth has actually occurred. This cannot be the case.

The wide disparities in the results obtained through the subjective global photography, investigator assessment and patient assessment methods, unequivocally establish that the subjective methods do not teach one of ordinary skill in the art how to accurately or consistently determine when hair growth has occurred. The opinion of Merck's expert, Dr. Whiting, that the '957 patent claims allow the use of subjective methods to measure hair growth should be given no weight by the Court because that opinion contradicts both the patent specification and the prosecution history. <u>See</u> <u>Phillips</u>, <u>slip op.</u> at 19. Merck's proposed claim construction, which relies on subjective methods, does not define a single objective standard for measuring hair growth and therefore does not clearly define the scope of the claimed invention.

---

[2] Of the subjective methods, the global photographic method incorporates before and after photographs – which are themselves objective – and may be referred to by other evaluators to draw their own subjective conclusions. This is still different than actual haircounts.

### D.    Merck's Distinction Between "Can Be" And "Must Be" Is Completely Spurious

Merck's argument based on the differences between the phrases "can be" and "must be" is wrong. According to Merck, because the '957 patent claims say that hair growth "can be" detected by haircount analysis and not that hair growth "must be" detected by haircount analysis and no other method, one of ordinary skill in the art would understand that any technique, objective or subjective, could be used to detect hair growth. Merck's conclusion, however, is premised on a misreading and misapprehension of the claim language. The phrase "at least until growth of hair can be detected" by haircount analysis refers to the detection of hair growth, not the method of detection, and reflects the fact that finasteride is not effective in growing hair in all patients – i.e., under the claim terms, finasteride is administered until hair growth can be detected. (Fisher Decl. ¶ 20). In other words, the phrase "can be" expresses the contingency that detection of hair growth may not be possible simply because hair growth may not in fact occur. (Fisher Decl. ¶ 20). In the event that the patient does exhibit hair growth, the '957 patent claim language requires that "haircount analysis" is the method to be used. (Fisher Decl. ¶ 20).

## II.  CONCLUSION

For the reasons set forth above and in DRL's Opening Claim Construction Brief, DRL respectfully submits that the claim element "at least until growth of hair can be detected in the balding area by haircount analysis of the balding area" should be construed in an objective manner to mean at least until growth of hair can be detected by haircount analysis utilizing macrophotography to detect hair growth.  Alternatively, DRL submits that the claims of the '957 patent are invalid as indefinite.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: /s/ David E. Moore

| | |
|---|---|
| Bruce D. Radin | Richard L. Horwitz |
| Stuart D. Sender | David E. Moore |
| BUDD LARNER, P.C. | Hercules Plaza, 6th Floor |
| 150 John F. Kennedy Parkway | 1313 N. Market Street |
| CN 1000 | Wilmington, DE  19899-0951 |
| Short Hills, NJ 07078-0999 | (302) 984-6000 |
| (973) 379-4800 | rhorwitz@potteranderson.com |
| | dmoore@potteranderson.com |

Dated:  August 22, 2005

*Attorneys for Defendants/Counterclaim Plaintiffs*

696051

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 22, 2005, the attached document was served via hand delivery and electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Mary B. Graham
James W. Parrett, Jr.
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347

I hereby certify that on August 22, 2005, I have Federal Expressed the documents to the following non-registered participants:

Robert L. Baechtold
Henry J. Renk
Fitzpatrick, Cella, Harper & Scinto
30 Rockefeller Plaza
New York, NY 10112

        By:   */s/ David E. Moore*
              Richard L. Horwitz
              David E. Moore
              Hercules Plaza, 6th Floor
              1313 N. Market Street
              Wilmington, Delaware 19899-0951
              (302) 984-6000
              rhorwitz@potteranderson.com
              dmoore@potteranderson.com

672977