IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| MERCK & CO., INC., | ) ) ) | |
| Plaintiff and Counterclaim Defendant, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 04-1313 (GMS) |
| DR. REDDY'S LABORATORIES, LTD. and DR. REDDY'S LABORATORIES, INC., | ) ) ) ) | |
| Defendants and Counterclaim Plaintiffs. | ) ) ) ) | |

**PLAINTIFF'S ANSWERING CLAIM CONSTRUCTION BRIEF**

MORRIS, NICHOLS, ARSHT & TUNNELL
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200

*Attorneys for Plaintiff Merck & Co., Inc.*

OF COUNSEL:

Robert L. Baechtold
Henry J. Renk
Ryan J. Cudnik
FITZPATRICK, CELLA, HARPER
  & SCINTO
30 Rockefeller Plaza
New York, New York 10112-3800
(212) 218-2100

Dated: August 22, 2005

i

# **TABLE OF CONTENTS**

Page

TABLE OF CITATIONS ................................................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS ............................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................................ 1

ANSWERING COUNTER-STATEMENT OF FACTS ................................................................. 3

ARGUMENT .................................................................................................................................... 5

I.   Merck's Proposed Construction Is Not "Indefinite" --
     It Reflects How A Person Of Ordinary Skill In The Art
     Would Understand The Language Of The '957 Patent ......................................................... 6

II.  The Intrinsic Evidence Does Not, As Dr. Reddy's
     Argues, "Require" Construing "Haircount Analysis"
     To Mean Actually Counting Hairs In A Photograph ............................................................ 7

III. The Extrinsic Evidence Of Record, Consistent With The
     Intrinsic Evidence, Demonstrates That Hair Growth Can
     Reliably Be Detected By Conventional Subjective Techniques ......................................... 10

CONCLUSION .............................................................................................................................. 12

ii

# TABLE OF CITATIONS

<u>Cases</u>                                                                                                                  <u>Page</u>

*Phillips v. AHW Corp.*,
    Nos. 03-1269 and 03-1286 (Fed. Cir. 2005) ........................................................................5

*Comark Communications, Inc. v. Harris Corp.*,
    156 F.3d 1182 (Fed.Cir. 1998) ............................................................................................9

*Fonar Corp. v. Johnson & Johnson*,
    821 F.2d 627 (Fed. Cir. 1987) ............................................................................................10

*Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*,
    805 F.2d 1558 (Fed. Cir. 1986) ............................................................................................9

1.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Merck & Co., Inc. ("Merck") and defendants Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc. (collectively "Dr. Reddy's") each submitted an opening claim construction brief on July 25, 2005.[1] The parties agree that the only claim construction dispute in this case is with respect to the following language that appears in the claims of U.S. Patent No. 5,547,957 ("the '957 patent") (Exhibit A):[2]

> at least until hair growth can be detected in the balding area by haircount analysis of the balding area.

(Exhibit A at col. 9, lns. 8-10 and col. 10, lns. 6-8).

The parties disagree on how this claim language should be construed. Merck submits this brief in response to Dr. Reddy's opening claim construction brief, and in further support of Merck's proposed claim construction

## SUMMARY OF ARGUMENT

Based on a mischaracterization of the intrinsic evidence, Dr. Reddy's incorrectly asserts that the claim term "haircount analysis" requires actual counting of hairs using photography. The claims of the '957 patent do not say that. In addition, neither the specification nor the prosecution history of the '957 patent requires such a construction.

---

[1] For convenience, Merck's opening claim construction brief (D.I. 34) will be cited herein as "Merck Open. Br." and Dr. Reddy's opening claim construction brief (D.I. 33) will be cited as "Dr. Reddy's Open. Br."

[2] The exhibits referred to herein are collected and appended to the Declaration of Ryan J. Cudnik, Esq. (D.I. 35) submitted by Merck with its opening claim construction brief.

2.

What the '957 patent specification *does* say is that hair growth can be detected using at least four separate visual techniques, only one of which employs actual counting of hairs and some of which do not require photography at all. All four techniques reliably detect hair growth. All involve visually assessing changes in appearance.

Similarly, in the '957 patent prosecution history, Merck relied on the same four visual techniques to establish that finasteride actually grew hair. The prosecution history does not, as incorrectly asserted by Dr. Reddy's, illustrate detection of hair growth only by actually counting hairs using photography.

Dr. Reddy's fundamentally mischaracterizes the intrinsic evidence. Both the '957 patent specification and its prosecution history describe the use of four separate visual techniques for detecting hair growth -- one objective photographic procedure involving actually counting hairs, and three subjective techniques that detect hair growth by visible changes in appearance. All reliably detect hair growth. All involve visually assessing changes in appearance.

Therefore, Dr. Reddy's proposed construction -- which improperly would limit the claims to actually counting hairs using photography -- clearly is at odds with the intrinsic evidence.

Moreover, Dr. Reddy's proposed construction is inconsistent with Merck's evidence as to how one of ordinary skill in the art would understand the disputed claim language, evidence that Merck submitted in the form of expert testimony. That expert testimony, which is totally consistent with the intrinsic evidence, demonstrates that the skilled person would

3.

understand that "haircount analysis" simply refers to a visual technique for assessing the change in appearance of the hair.

Merck therefore submits that the disputed language of the '957 patent claims properly should be construed to mean:

> at least until hair growth can be detected in the balding area by visually assessing the change in appearance of the balding area.

That construction -- which is how one of ordinary skill in the art would understand the claim language -- is consistent with all of the intrinsic and extrinsic evidence.

### ANSWERING COUNTER-STATEMENT OF FACTS

Dr. Reddy's correctly notes (Dr. Reddy's Open. Br. at 3) that Example 4 of the '957 patent "exemplifies what the inventors meant by haircount analysis" but then incorrectly characterizes what that example discloses.

As understood by a person of ordinary skill in the art, Example 4 illustrates four different visual procedures for detecting hair growth after finasteride administration, only one of which (macrophotography) involves actually counting visible hairs.[3] The other three visual procedures in Example 4 (global photography, patient self-assessment and investigator assessment) detect hair growth subjectively based on a visual assessment of changes over time in the appearance of the hair. (*See* Merck Open. Br. at 7-8; *see also* Whiting Decl. ¶¶ 11-14).

---

[3] An increase over time in the number of visible hairs actually counted provides an objective indication of hair growth. (Whiting Decl. ¶ 10). The reference to "Whiting Decl." refers to the Declaration of Dr. David Whiting (D.I. 36) submitted by Merck with its opening claim construction brief.

4.

Example 4 is entitled "MACROPHOTOGRAPHY AND GLOBAL PHOTOGRAPHY PROCEDURE FOR DETECTION OF HAIR GROWTH."  (Exh. A at col. 8, lns. 55-57).  Only the macrophotographic procedure (Exh. A at col. 7, ln. 59-col. 8, ln. 30) involves actually counting hairs from a photograph (Exh. A at col. 8, lns. 20-30).

The global photographic procedure (Exh. A at col. 8, lns. 34-56) does not involve actually counting hairs; instead, the '957 patent makes clear that, in global photography, hair growth is detected by changes in "appearance."  (Exh. A at col. 8, lns. 42-43; Whiting Decl. ¶ 11).  Similarly, using patient self-assessment and investigator assessment, hair growth can be detected subjectively by evaluating changes in appearance.

A person of ordinary skill in the art would understand the '957 patent as teaching that any of those four conventional hair growth detection techniques may be employed to assess hair growth during treatment with finasteride (Whiting Decl. ¶¶ 11-14).

Dr. Reddy's mischaracterizes the disclosure of the Olsen paper (Exh. D).  That paper does not, as asserted by Dr. Reddy's (Dr. Reddy's Open. Br. at 3), "[illustrate] the unreliability of subjective evaluation of hair growth, particularly by the patient."  The Olsen paper describes measuring the efficacy or effectiveness of treatment using an objective technique involving actually counting hairs from a photograph, and two subjective techniques (patient self-assessment and investigator assessment).  (Exh. D at paragraph bridging pages 470-471).  Indeed, the Olsen paper, in its "Results" section (Exh. D at 471), expressly states that counting hair and the two subjective assessments all gave the same results: "there were no significant differences between treatment groups."

5.

Dr. Reddy's also mischaracterizes what the '957 patent says about the Olsen paper. The '957 patent does not state, as Dr. Reddy's suggests (Dr. Reddy's Open. Br. at 3), that "a" methodology for detection of hair growth is described in the Olsen paper. Rather, the '957 patent states "Methodology for detection of hair growth is also described in [the Olsen paper]." (Exh. A at col. 8, lns. 31-33). One of ordinary skill in the art would understand, therefore, that Example 4 refers to and illustrates all four hair growth assessment techniques (counting hair, global photography, patient self-assessment and investigator assessment). (Whiting Decl. ¶¶ 13-14).

Finally, in its discussion of the prosecution history of the '957 patent (Dr. Reddy's Open. Br. at 4-6), Dr. Reddy's fails to mention the fact that, in the Amendment dated November 13, 1995 (Exh. J), Merck made clear to the examiner that *all four* hair growth detection methodologies, including the subjective ones, demonstrated, by statistically significant results, that finasteride improved the appearance of the patient's hair. (*See* Merck Open. Br. at 11).

Thus, all of the intrinsic and extrinsic evidence shows that hair growth reliably can be detected not only by actually counting hairs, but also by subjective methods including global photography, patient self-assessment and investigator assessment.

## ARGUMENT

While the parties generally agree on the claim construction principles reaffirmed in *Phillips v. AHW Corp.*, Nos. 03-1269 and 03-1286 (Fed. Cir. July 12, 2005), Dr. Reddy's proposed claim construction violates those canons of claim construction. As discussed more fully below, Dr. Reddy's attempts improperly to limit "haircount analysis" to actually counting

6.

hairs from a photograph. Its proposed claim construction is at odds with the plain language of the '957 claims, the '957 patent specification, and the '957 prosecution history, all of which point to a meaning of "haircount analysis" that includes not just actually counting hairs from a photograph, but also any of the other, subjective techniques set forth. Likewise, the extrinsic evidence proffered by Merck,[4] which is totally consistent with all the intrinsic evidence, demonstrates that "haircount analysis" means and includes, in addition to actually counting hairs from a photograph, the subjective techniques discussed in the '957 patent and in its prosecution history.

I.  **Merck's Proposed Construction Is Not "Indefinite" --
It Reflects How A Person Of Ordinary Skill In The Art
Would Understand The Language Of The '957 Patent**

Dr. Reddy's wrongly, and without support, argues (Dr. Reddy's Open. Br. at 8-9) that its proposed construction allows one skilled in the art to "clearly ascertain whether hair growth has actually occurred" whereas Merck's proposed construction allegedly "is too indefinite and subjective," and "provides no procedure as to how to actually count hairs as required by the claims." Dr. Reddy's argument is without merit.

First of all, as discussed below, the claims do not "require" actually counting hairs. The evidence of record confirms that one of ordinary skill in the art could utilize any or all of the four techniques disclosed in the '957 patent to detect hair growth (Exh. A at col. 7, ln. 53 -

---

[4] Unlike Merck, who submitted the declaration of its expert, Dr. Whiting, Dr. Reddy's has proffered no expert testimony.

7.

col. 8, ln. 62; Whiting Decl. ¶¶ 14-16).[5] It is clear that the skilled person could utilize all of the disclosed techniques to reliably detect hair growth after treatment with finasteride.[6] Dr. Reddy's has proffered no evidence to the contrary.

## II. The Intrinsic Evidence Does Not, As Dr. Reddy's Argues, "Require" Construing "Haircount Analysis" To Mean Actually Counting Hairs In A Photograph

Dr. Reddy's argument that both the '957 patent claims themselves as well as the '957 patent prosecution history "require" actually counting hairs from a photograph (Dr. Reddy's Open. Br. at 9-12) ignores the plain language of the '957 patent claims, mischaracterizes the prosecution history, and improperly limits "haircount analysis" to a photographic procedure including actually counting hairs. Nothing in the intrinsic evidence "requires" the construction proffered by Dr. Reddy's.

The claims of the '957 patent state that finasteride is administered at least until growth of hair *can be* detected in the balding area by haircount analysis of the balding area. (Exh. A at col. 9, lns. 8-10 and col. 10, lns. 6-9, emphasis added). That permissive claim language plainly means that various techniques may be used to detect hair growth.

Moreover, a person of ordinary skill in the art would know that, if hair growth "can be" detected by actually counting visible hairs, it also can be detected by visually observing

---

[5]  Moreover, Merck obtained approval for PROPECIA® after submitting hair growth detection data based on all four techniques discussed in the '957 patent. (*See* Exhibit O at 6, attached to the accompanying Supplemental Declaration of Ryan J. Cudnik, Esq.).

[6]  For the same reasons, Dr. Reddy's related argument (that Merck's "truly subjective criteria does not and cannot show one of ordinary skill in the art whether hair growth is detected") (Dr. Reddy's Open. Br. at 9) also is without merit.

its change in appearance, such as by using global photography, patient self-assessment or investigator assessment. Thus, when the '957 patent claims say "haircount analysis", a person of ordinary skill in the art would understand that language to mean and include not only actually counting hairs from a photograph, but also visually assessing the change in appearance of the balding area using any conventional hair growth assessment technique. (*See* Whiting Decl. ¶ 16).

Further, the prosecution history of the '957 patent -- mischaracterized by Dr. Reddy's -- does not support Dr. Reddy's proposed construction. During prosecution, Merck demonstrated, via the Kaufman declarations, that objective counting of hairs and three other, subjective techniques *all* reliably can be used to detect hair growth. All gave, by statistically significant results, reliable indications of hair growth. Dr. Reddy's mistakenly characterizes global photography as including actually counting hairs; it does not. (*See* above at 3-4). Thus, during prosecution when Merck characterized Example 4 as illustrating how a skilled person could detect hair growth using both macrophotography and global photography (Exh. J at 3), clearly Merck was referring to both actually counting of hairs as well as other, subjective procedures.

Contrary to Dr. Reddy's mischaracterizations, a person of ordinary skill in the art would understand, based on all of the intrinsic evidence, that the disputed claim language means what Merck proposes, not what Dr. Reddy's proposes.

Dr. Reddy's proposed claim construction also attempts improperly to limit "haircount analysis" to a photographic technique. The intrinsic evidence (the patent

8.

9.

specification and prosecution history), however, does not support such a limited claim construction. During prosecution when Merck referred to the statistically significant results from patient self-assessment and investigator assessment (Exh. J at 4), clearly Merck was referring to subjective procedures including ones not requiring photography.

The '957 patent specification (Example 4) makes clear that hair growth can be detected using either photographic techniques (one objective and one subjective) or two additional subjective techniques (patient self-assessment and investigator assessment). Neither patient self-assessment nor investigator assessment, however, requires photography. The '957 patent on its face, therefore, discloses that both photographic and non-photographic techniques are acceptable for reliably detecting hair growth, and the claims should not be limited only to photographic techniques. In addition, as explained above (at 3-5), the specification does not limit hair growth detection to just objective techniques involving actually counting hairs. *See Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed.Cir. 1998) (refusing to read limitations from the specification into the claims); *see also Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 805 F.2d 1558, 1563 (Fed. Cir. 1986) ("This court has cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.").

The '957 patent prosecution history is to the same effect. The first Kaufman declaration (Exh. H at ¶¶ 10-14) and the November 13, 1995 Amendment (Exh. J at 3-4) describe these same four techniques as acceptable methods of detecting hair growth.

10.

Dr. Reddy's reliance on *Fonar Corp. v. Johnson & Johnson*, 821 F.2d 627 (Fed. Cir. 1987) for the proposition that "subjective" techniques cannot be used to evaluate hair growth (Dr. Reddy's Open. Br. at 13-14) is misplaced. In *Fonar*, unlike here, the patentee argued that NMR standards *not* disclosed in the patent or during its prosecution history should be used in lieu of the standards that *were* taught in the patent. By contrast, here, the '957 patent teaches, on its face, an objective photographic procedure, a subjective photographic procedure, and two other subjective techniques for detecting hair growth -- patient self-assessment and investigator assessment. Thus, Merck's proposed claim construction properly construes "haircount analysis" to mean and include all four visual techniques, all disclosed in the '957 patent as acceptable methods of detecting hair growth.

Based on this intrinsic evidence, one of ordinary skill in the art would understand that both objective and subjective, photographic and non-photographic, techniques are acceptable for detecting hair growth. Dr. Reddy's proposed claim construction, requiring only one photographic objective technique, thus is too narrow and not supported by the intrinsic evidence.

### III.   The Extrinsic Evidence Of Record, Consistent With The Intrinsic Evidence, Demonstrates That Hair Growth Can Reliably Be Detected By Conventional Subjective Techniques

Merck's expert, Dr. Whiting, has explained in detail how one of ordinary skill in the art would understand the disputed claim language. That explanation, grounded in the '957 patent specification and its prosecution history, is fully consistent with that intrinsic evidence.

As explained by Dr. Whiting, the skilled person would understand that the '957 patent describes four conventional hair growth detection techniques (one objective method

11.

involving actually counting hairs, and three subjective techniques that do not), and that any of them can be used to reliably detect hair growth. For example, the global photographic technique (a subjective method), in which an observer visually assesses hair growth by rating the change in appearance of the hair over time, is fairly reliable because of the safeguards built into the method. (Whiting Decl. ¶¶ 12-14).

Moreover, Dr. Whiting explains that, in the real world, physicians monitor a patient's hair growth progress during treatment with finasteride principally by the change in appearance over time, and also by asking the patient to self-assess how his hair growth has changed during treatment. (Whiting Decl. ¶ 15). Both of those detection methods are subjective, and both detect hair growth that also can be detected by objective counting of hairs, just as stated in the claims of the '957 patent. (Whiting Decl. ¶ 16).

Accordingly, the extrinsic evidence, consistent with the intrinsic evidence, supports Merck's proposed claim construction.

12.

## CONCLUSION

For the foregoing reasons and those set forth in its opening brief, Merck submits that the disputed claim language in the claims of the '957 patent means that finasteride is administered for a period of time that is at least until hair growth can be detected in the balding area by visually assessing the change in appearance of the balding area.

        MORRIS, NICHOLS, ARSHT & TUNNELL

        */s/ James W. Parrett, Jr.*
        Mary B. Graham (#2256)
        James W. Parrett, Jr. (#4292)
        1201 North Market Street
        P.O. Box 1347
        Wilmington, Delaware 19899-1347
        (302) 658-9200

        *Attorneys for Plaintiff Merck & Co., Inc.*

OF COUNSEL:

Robert L. Baechtold
Henry J. Renk
Ryan J. Cudnik
FITZPATRICK, CELLA, HARPER
  & SCINTO
30 Rockefeller Plaza
New York, New York 10112-3800
(212) 218-2100

Dated: August 22, 2005

479918

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2005, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

>Richard L. Horwitz, Esquire
>POTTER ANDERSON & CORROON LLP
>Hercules Plaza
>1313 North Market Street
>P.O. Box 951
>Wilmington, DE  19899-1951

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on August 22, 2005 upon the following individuals in the manner indicated:

**BY FEDERAL EXPRESS**

>Bruce D. Radin
>BUDD LARNER, P.C.
>150 John F. Kennedy Parkway
>CN 1000
>Short Hills, NJ  07078-0999

*/s/ James W. Parrett, Jr.*
_____
James W. Parrett, Jr. (#4292)