IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MERCK & CO., INC. | ) |
|     Plaintiff and<br>    Counterclaim Defendant | )<br>)<br>) |
| v. | )    Civil Action No. 04-1313 (GMS) |
| DR. REDDY'S LABORATORIES, LTD.,<br>and DR. REDDY'S LABORATORIES,<br>INC. | )<br>)<br>) |
|     Defendants and<br>    Counterclaim Plaintiffs | )<br>) |

## STIPULATION

Plaintiff Merck & Co., Inc. ("Merck") and defendants Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc. (collectively, "Reddy"), through their counsel, hereby STIPULATE and AGREE that:

## Definitions

1. "The '817 patent" means U.S. Patent No. 5,571,817.

2. "The '957 patent" means U.S. Patent No. 5,547,957.

3. "Finasteride" means the compound 17β-(N-tert-butylcarbamoyl)-4-aza-5α-androst-1-en-3-one set forth in claim 1 of the '817 patent. "Finasteride" also means the compound 17β-(N-tert-butylcarbamoyl)-4-aza-5α-androst-1-ene-3-one set forth in claim 1 of the '957 patent. "Finasteride" also means the compound 17β-(N-tert-butylcarbamoyl)-4-aza-2α-androst-1-ene-3-one set forth in claim 5 of the '957 patent.

4. "FDA" means the United States Food and Drug Administration.

5. "Merck's NDA" means New Drug Application No. 20-788 filed by Merck with the FDA seeking approval for tablets containing 1 mg of the active ingredient finasteride for the treatment of male pattern baldness.

6. "Reddy's ANDA" means Abbreviated New Drug Application No. 76-436 filed by Reddy with the FDA seeking approval to sell finasteride 1 mg tablets prior to the expiration of the '817 and '957 patents.

7. "Reddy's proposed product" means the 1 mg finasteride tablets that are the subject of Reddy's ANDA.

### Merck's Branded Product

8. The FDA, on December 19, 1997, approved Merck's NDA for the treatment of male pattern baldness.

9. Since January 1998, Merck has marketed and sold within the United States tablets containing 1 mg of the active ingredient finasteride under the trade name PROPECIA®.

10. PROPECIA® has been prescribed by physicians for the treatment of male pattern baldness.

11. PROPECIA® is and has been a commercial success.

### Reddy's Proposed Product

12. Reddy's ANDA seeks approval to sell Reddy's proposed product within the United States.

13. Reddy's proposed product contains the same compound, finasteride, as an active ingredient and in the same amount (1 mg) as in PROPECIA®.

14. Reddy's ANDA asserts that Reddy's proposed product is bioequivalent to PROPECIA®.

15. Upon FDA approval of Reddy's ANDA, Reddy will sell Reddy's proposed product for the treatment of androgenic alopecia, including male pattern baldness. Physicians will prescribe Reddy's proposed product as a generic substitute for PROPECIA® for use in treating male pattern baldness.

## Secondary Considerations -- '817 Patent

16. Prior to the invention by Gary H. Rasmusson and Glenn F. Reynolds claimed in the '817 patent, there was a long-felt, but unmet, need for an orally-administered treatment for androgenic alopecia, including male pattern baldness.

17. Prior to the invention by Gary H. Rasmusson and Glenn F. Reynolds claimed in the '817 patent, others had attempted, but failed, to discover a therapeutically effective oral treatment for androgenic alopecia, including male pattern baldness.

18. The invention of Gary H. Rasmusson and Glenn F. Reynolds claimed in the '817 patent met a long-felt need for an orally-administered treatment for androgenic alopecia, including male pattern baldness.

19. Prior to the invention by Gary H. Rasmusson and Glenn F. Reynolds claimed in the '817 patent, persons skilled in the art of treating androgenic alopecia (including male pattern baldness) expressed skepticism or disbelief that a therapeutically-effective oral treatment existed or could be found for such conditions.

20. In comparison to compounds known in the art prior to the invention by Gary H. Rasmusson and Glenn F. Reynolds claimed in the '817 patent, orally-administered

finasteride has unexpected desirable properties for the treatment of androgenic alopecia, including male pattern baldness.

21. The commercial success of PROPECIA® (set forth in paragraph 11 above), the fulfillment of the long-felt need set forth in paragraphs 16 and 18 above, and the unexpected desirable properties set forth in paragraph 20 above are the direct result of the merits of the invention claimed in the '817 patent, and are not the result of any other factor.

22. There is a legally-cognizable nexus between the invention claimed in the '817 patent and the secondary considerations set forth in paragraphs 11, 13-15 and 16-20 above. Reddy will not assert otherwise.

### Reddy's Infringement

23. The oral administration of Reddy's proposed product to patients for whom Reddy's proposed product is prescribed for the treatment of androgenic alopecia, including male pattern baldness, will literally and directly infringe claims 1 and 2 of the '817 patent pursuant to 35 U.S.C. § 271(a).

24. Reddy's actions in selling Reddy's proposed product will constitute active inducement of infringement of claims 1 and 2 of the '817 patent pursuant to 35 U.S.C. § 271(b).

25. Reddy's actions in selling Reddy's proposed product will constitute contributory infringement of claims 1 and 2 of the '817 patent pursuant to 35 U.S.C. § 271(c).

26. Reddy's proposed product will be used in a method of treating male pattern baldness.

27. Reddy's proposed product will be used in a method of arresting and reversing male pattern baldness.

28. Reddy's proposed product will be orally administered to male persons having a balding area.

29. Reddy's proposed product will be orally administered to bald or balding male persons having a balding area.

30. At least some patients for whom Reddy's proposed product will be prescribed for treating male pattern baldness will use that product daily for three months or more (the period of time recommended in Reddy's proposed package insert labeling to obtain an observed benefit).

31. Merck contends that the oral administration of Reddy's proposed product for the treatment of male pattern baldness, or for the arresting and reversing of male pattern baldness, will directly infringe claims 1, 2 and 5-7 of the '957 patent either literally or under the doctrine of equivalents. Merck understands that Reddy contends that an actual measurement of hair growth is required to directly infringe the claims of the '957 patent. Merck contends that, to establish direct infringement, no actual haircount analysis is required; rather, it is only necessary that Reddy's proposed product be orally administered "at least until growth of hair can be detected in the balding area by haircount analysis of the balding area."

32. Reddy contends that no one will directly infringe the claims of the '957 patent by orally administering Reddy's proposed product for the treatment of male pattern baldness (or for arresting and reversing male pattern baldness), either because no actual haircount analysis will be performed (as allegedly required by the claims) or because no hair growth will occur that can be detected by haircount analysis. Reddy also contends that it will not directly infringe the claims of the '957 patent because it will not orally administer finasteride or because it will not perform any actual haircount analysis (allegedly required by the claims).

However, if the Court finds that the oral administration of Reddy's proposed product for the treatment of male pattern baldness, or for arresting and reversing male pattern baldness, will directly infringe one or more claims of the '957 patent, Reddy admits that its actions in selling Reddy's proposed product will constitute active inducement of infringement of those claims pursuant to 35 U.S.C. § 271(b).  Therefore, the issue of inducement of infringement under 35 U.S.C. 271(b) need not be tried.

### Discovery

33. Merck will not seek any further fact deposition discovery of Reddy in this case and agrees to withdraw its notice for the deposition of Robert J. Koprowski and its September 28, 2005 notice of Rule 30(b)(6) deposition.

34. Merck will not in this case seek the further production of Reddy documents sought by Merck Document Request Nos. 9, 15, 16, 17, 19, 21, 27, 28 or 40 in Plaintiff's First Set of Request for the Production of Documents and Things.  Merck additionally will not seek supplemental responses from Reddy concerning Merck's Interrogatory Nos. 3 and 4.

| | |
|---|---|
| Dated: January 12, 2006 | Dated: January 12, 2006 |
| MORRIS, NICHOLS, ARSHT & TUNNELL, LLP | POTTER ANDERSON & CORROON LLP |
| */s/ James W. Parrett, Jr.* | */s/ David E. Moore* |
| _____ | _____ |
| Mary B. Graham (#2256) | Richard L. Horwitz (#2246) |
| James W. Parrett, Jr. (#4292) | David E. Moore (#3983) |
| 1201 North Market Street | Hercules Plaza, 6th Floor |
| P.O. Box 1347 | 1313 N. Market Street |
| Wilmington, Delaware 19899-1347 | P.O. Box 951 |
| (302) 658-9200 | Wilmington, DE 19899-0951 |
| | (302) 984-6000 |
| *Attorneys for Plaintiff* | *Attorneys for Defendants/Counterclaim* |
| *Merck & Co., Inc.* | *Plaintiffs* |
| OF COUNSEL: | OF COUNSEL: |
| Robert L. Baechtold | Bruce D. Radin |
| Henry J. Renk | Stuart D. Sender |
| Ryan J. Cudnik | BUDD LARNER, P.C. |
| FITZPATRICK, CELLA, HARPER & SCINTO | 150 John F. Kennedy Parkway |
| 30 Rockefeller Plaza | CN 1000 |
| New York, New York 10112-3800 | Short Hills, NJ 07078-0999 |
| (212) 218-2100 | (973) 379-4800 |

501532